Joseph Kirk NEWBROUGH, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–06–00117–CR.

Court of Appeals of Texas, El Paso.

May 31, 2007.

865

Kevin R. Bartley, Kevin R. Bartley, P.C., Odessa, for Appellant.

John L. Pool, District and County Attorney, Andrews, for Appellee.

Before CHEW, C.J., McCLURE, and CARR, JJ.

## OPINION

KENNETH R. CARR, Justice.

This is an appeal from a conviction for the misdemeanor offense of driving while intoxicated. Appellant pleaded guilty to the court, and the court assessed punishment at twelve months' community supervision and a fine of $500. We reverse and remand for further proceedings.

## I.  SUMMARY OF THE EVIDENCE

At the hearing on Appellant's motion to suppress the evidence, Dan Gomez testified that he was a certified peace officer employed by the Andrews County Sheriff's Department.  He had been so employed for nine and one-half years.  On February 12, 2005, he was patrolling in the early morning hours.  At about 1:30 a.m., Deputy Gomez was located on Northeast 2001 Road, which is also called Taylor Road, approximately seven miles north of the town of Andrews.  He was parked on the side of the road, with his patrol vehicle heading north.  A Ford SUV passed, traveling north.  Deputy Gomez followed the vehicle for a mile.  Nothing unusual occurred.  Then the SUV, driven by Appellant, came to the intersection of Northeast 2001 and Northeast County Road 5500 ("Northeast 5500"), where Appellant turned west through a cattle guard onto a dirt road.  Deputy Gomez activated his overhead lights and stopped the vehicle. Appellant was the sole occupant.

Deputy Gomez characterized Northeast 5500 as a private oil field road usually frequented by oil field and ranch workers. The vehicles usually seen on the road were pickups of various types, water-hauling trucks, or "gang-unit type trucks." Deputy Gomez stated that SUV-type vehicles were not normally seen on that particular road. He was concerned about oil field theft and underage drinking. He considered the presence of the vehicle unusual, given the time of the day. The deputy testified that the road that Appellant turned onto comes to a tee intersection. If one were to go north at the tee, he would come to an office behind an area called Florey Park. If he went south, he would eventually come back to Taylor Road.

On cross-examination, Deputy Gomez testified that it was his intention to detain Appellant when the officer activated his overhead lights; he was not free to leave. Deputy Gomez stated that the area at the intersection was not a high crime area, but he did watch out for oil-field thefts and underage drinking. When asked if the county maintained the road onto which Appellant had turned, the deputy replied that he did not know who maintained the road. He stated that he had no information indicating that the SUV had been involved in a crime, and he did not observe any criminal violation. Deputy Gomez testified that he was not aware that Appellant was illegally on someone else's property. The time of day and the type of vehicle were the main reasons that the deputy stopped Appellant's SUV.

During a voir dire examination, Deputy Gomez testified that he thought an individual named Bill Tom ran cattle on the land in the area. Over the years, Tom had mentioned that he had found beer cans in the area and saw youths doing "doughnuts" on the property. He asked that people found on the property be told to leave the property. Deputy Gomez estimated that this conversation had occurred eight months prior to Appellant's detention. Deputy Gomez stated that there was no indication that the Appellant posed any danger to anyone or that Appellant was in some sort of distress. Appellant was subsequently convicted of driving while intoxicated.

## II. DISCUSSION

In Appellant's sole issue on appeal, he asserts that Deputy Gomez did not have a reasonable suspicion in order to detain him in his vehicle. We review a motion to suppress evidence by both abuse of discretion and *de novo* standards. *Guzman v. State*, 955 S.W.2d 85, 87–91 (Tex. Crim.App.1997); *Urquhart v. State*, 128 S.W.3d 701, 704–05 (Tex.App.-El Paso 2003, pet. ref'd). Purely factual questions, based upon evaluation of credibility and demeanor of witnesses, require application of the abuse of discretion standard. *Guzman*, 955 S.W.2d at 89. Mixed questions of law and fact which are not dependent on credibility or demeanor are reviewed *de novo*. *Id.* We review the evidence in the light most favorable to the trial court's ruling. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000). In a suppression hearing, the trial court is the sole finder of fact. *Pace v. State*, 986 S.W.2d 740, 744 (Tex.App.-El Paso 1999, pet. ref'd). The trial judge may believe or disbelieve any of the evidence presented. *Id.* The totality of circumstances are considered to determine whether the trial court's findings are supported by the record. *In re D.A.R.*, 73 S.W.3d 505, 509 (Tex.App.-El Paso 2002, no pet.) (citing *Brewer v. State*, 932 S.W.2d 161, 166 (Tex.App.-El Paso 1996, no pet.)).

Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392

U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under the Fourth Amendment, a temporary detention is justified when the detaining officer has specific articulable facts which, together with rational inferences from those facts in light of the officer's experience and general knowledge, would lead a reasonable officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.* at 21–22, 88 S.Ct. at 1880; *Brother v. State,* 166 S.W.3d 255, 257 (Tex.Crim.App. 2005), *cert. denied,* 546 U.S. 1150, 126 S.Ct. 1172, 163 L.Ed.2d 1129 (2006); *Kothe v. State,* 152 S.W.3d 54, 63–64 (Tex.Crim. App.2004). The officer must be able to articulate more than an "inchoate and unparticularized suspicion or 'hunch' of criminal activity." *Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000). "Reasonableness," under Fourth Amendment standards, is a fact-specific inquiry measured in objective terms by examining the totality of the circumstances. *Kothe,* 152 S.W.3d at 63.

An officer's stop of an automobile constitutes a seizure, within the meaning of the Fourth Amendment. *Corbin v. State,* 85 S.W.3d 272, 276 (Tex.Crim.App. 2002); *see also Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); *Garza v. State,* 771 S.W.2d 549, 558 (Tex.Crim.App.1989). A seizure occurs when a driver pulls over in response to the officer's activation of his overhead lights. *Corbin,* 85 S.W.3d at 276. To determine the reasonableness of an investigative detention, we apply the *Terry* test: (1) Whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances that justified the initial interference. *See Terry,* 392 U.S. at 19–20, 88 S.Ct. at 1879; *Davis v. State,* 947 S.W.2d 240, 244 (Tex.Crim.App.1997).

In the instant case, we find that Deputy Gomez did not have specific, artic-

ulable facts which, together with rational inferences from those facts in light of his experience and general knowledge, would lead a reasonable officer to conclude that Appellant had been engaged, or was soon to engage, in criminal activity.

A lawful temporary detention must be based upon more than the suspicious location of a vehicle or the time of day. *Klare v. State,* 76 S.W.3d 68, 75 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). While these factors are relevant to an analysis of reasonableness, the time of day and the level of suspicious activity in a given area are facts which focus on the suspect's surroundings, rather than on the suspect himself. *Id.* Courts generally require some additional fact(s) particular to the suspect's behavior in order to justify a suspicion of criminal activity. *Id.* Here, Deputy Gomez could not articulate any specific facts that related to Appellant's activities. The past indications of criminal activity did not relate to any of Appellant's actions or movements. Furthermore, assuming arguendo that Appellant was on someone else's property, there was no indication that he was trespassing or otherwise engaging in criminal activity.

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment. Tex.R.App. P. 44.2. The harm analysis for the erroneous admission of evidence obtained in violation of the Fourth Amendment is Rule 44.2(a)'s constitutional standard. *Hernandez v. State,* 60 S.W.3d 106, 108 (Tex.Crim.App.2001). Accordingly, we must reverse the trial court's judgment, unless we determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. Tex.R.App. P. 44.2(a). The question is whether the trial court's denial of Appellant's motion to suppress and its admission of the evidence were harmless

beyond a reasonable doubt. *See Williams v. State,* 958 S.W.2d 186, 194 (Tex.Crim. App.1997). In applying the "harmless error" test, we ask whether there is a "reasonable possibility" that the error might have contributed to the conviction. *Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim.App.1998), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

After carefully reviewing the record and performing the required harm analysis under Rule 44.2(a), we are unable to determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. *See Williams,* 958 S.W.2d at 195. The erroneous admission of the evidence obtained after the temporary detention formed the basis for Appellant's conviction; thus, Appellant was harmed by its admission. Accordingly, we sustain Appellant's sole issue.

### III. CONCLUSION

We reverse the judgment of the trial court and remand for further proceedings.