COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| GREGG GOMEZ A/K/A GREGORY GOMEZ, | § | No. 08-06-00318-CR |
|  | § | Appeal from the |
| Appellant, | § | 243rd District Court |
| v. | § | of El Paso County, Texas |
| THE STATE OF TEXAS, | § | (TC# 20040D04596) |
| Appellee. | § |  |
|  | § |  |

## **O P I N I O N**

Gregory Gomez appeals his conviction for burglary of a habitation. The trial court assessed punishment at 10 years' imprisonment, probated for 10 years' community supervision. Appellant raises eight issues on appeal challenging the trial court's denial of his motion for new trial, the denial of his motion to suppress, and arguing the evidence is legally insufficient to support his conviction. We affirm.

On August 20, 2004, Officer Daniel Davis responded to a fellow officer's call for assistance in Northeast El Paso. The officer who had called for assistance was engaged with two individuals when Davis arrived. Officer Davis approached Appellant, and moved him away from his companion and the other officer. The officer escorted Appellant to his patrol car, where Davis verified Appellant's identification and discovered a warrant had been issued for Appellant's arrest related to a burglary. Officer Davis then placed Appellant in custody and transported him to the El Paso Police Department's Northeast Regional Command Center.

At the command center, Appellant was interviewed by Officer Joseph Guevara who was a member of the department's Northeast Tactical Unit. According to Officer Guevara's testimony, he received a call from his superior officer that a burglary suspect was in custody at approximately midnight on August 21, 2004. When he arrived at the command center, Officer Guevara met with Officer Davis who explained that he had arrested Appellant pursuant to a warrant for burglary of a habitation at 3908 Quasar Court, in Northeast El Paso. According to the burglary case file Officer Guevara reviewed, property stolen from the home on Quasar Court had been recovered from an El Paso pawn shop, and records indicated Appellant pawned the items.

Officer Davis moved Appellant to the tactical office where Appellant meet with Officer Guevara. According to Officer Guevara, Appellant was immediately advised of his rights and the charges against him. After Officer Guevara confirmed that Appellant was able to read and write, Appellant read and signed a Miranda warning card. According to the officer's testimony, Appellant told him about the Quasar Court burglary, and that the police had "tracked him down" through the items he had pawned. Appellant offered the officer additional names of individuals Appellant claimed were also involved in the burglaries and offered to show the police the locations of additional robberies. Officer Guevara testified that when Appellant indicated he could not remember the addresses of these additional houses, Appellant agreed to ride along with Officer Guevara and Officer Davis and point out the houses where the other burglaries took place.

The two officers drove Appellant around Northeast El Paso where, according to Officer Guevara, Appellant pointed out several locations where he stated he had been involved with

burglaries or where he knew burglaries had taken place. After Appellant and the two officers returned to the Regional Command Center, Officer Guevara generated a typed statement, including all the information Appellant provided about the Quasar Court burglary, the other burglaries he pointed out during the drive, and his associates. Officer Guevara testified that Appellant read the statement, and then placed his handwritten initials at the beginning and end of each paragraph. According to the statement as it was introduced into evidence at trial, Appellant signed the Miranda card at 12:38 a.m., and the written statement, which Appellant initialed and signed, was produced at 3:18 a.m. Officer Guevara testified that Appellant placed his signature on the confession at approximately 4:40 a.m.

Following Appellant's confession, Officer Guevara attempted to locate an individual Appellant had identified as "Sy Smith" who was also involved in the burglaries. When Officer Guevara attempted to locate Mr. Smith, he discovered Appellant's alleged accomplice was stationed in Germany with the United States Army at the time Appellant claimed he was involved in the burglaries. Officer Guevara also explained that following Appellant's confession, he was not able to locate a police report for any of the additional burglary sites Appellant identified.

Officer Guevara testified that Appellant was awake at all times during the interview, and that after Appellant read the statement, he declined the opportunity to add or change anything of the information.

Appellant's account of the events surrounding his confession differed significantly from the officer's. Appellant told the jury that once he arrived at the command center, he was placed in a holding cell where he fell asleep until Officer Guevara woke him up and took him to an

interview room. Appellant testified that it was Officer Guevara who asked him to help the officers by identifying houses that had been burglarized and that it was the officer who suggested they drive to the locations. Appellant explained that the officers told him that he was not in any trouble, and that if he cooperated, he would be released to his father. Appellant stated that the officer's drove him around the North Hills area of El Paso, pointed out certain houses and asked who had burglarized the home. When Appellant responded that he did not know about the burglaries, he testified that the officers threatened to "call the judge and add time to [his] sentence." Appellant testified that he denied knowledge of any burglaries, including the Quasar Court burglary, numerous times and the police continued to threaten him. Appellant testified that the officers drove him around for three and a half hours.

When they returned to the command center, Appellant testified Officer Guevara took him to a "computer room" where Appellant was seated in a manner that did not allow him to see what the officer was typing. Appellant remembered that Officer Guevara told him that if he complied he would be released to his father. According to Appellant, as the officer typed the report, he dozed and fell asleep. He only woke up when Officer Guevara asked him questions about his education. Appellant denied confessing to any burglaries during that time.

When the paperwork was finished, Appellant testified that Officer Guevara woke him up, and instructed him to initial the document in numerous places. Appellant admitted that he initialed and signed the document, but denied ever reading it. He testified that he complied with Officer Guevara's instructions to sign because the officer continued to assure him that he would be released to his father when they were finished. Finally, Appellant testified that the Miranda card was not given to him, and he did not sign it until after the officer took his statement.

-4-

Regarding the equalizer recovered from Atlas Pawn, Appellant testified that the device did not come from the Quasar Court burglary, but that he purchased it himself, and was forced to pawn it when his father forbid him from installing it in his mother's car.

Appellant was indicted for burglary of a habitation; specifically the home of Mr. William Goode, the owner of 3908 Quasar Court, who was the complaining witness in this case. Appellant was sentenced by the trial court to ten years' imprisonment, probated for ten years' community supervision. Appellant was also ordered to pay Mr. Goode $5,000 in restitution.

Issues One, Three, Five, and Six deal with the admission of Appellant's written confession into evidence at trial. In Issue One, Appellant contends the trial court erred in denying him an evidentiary hearing on his motion for new trial because the prosecution failed to inform Appellant that their investigation had revealed that the accomplice Appellant identified in his statement was stationed overseas with the Unites States miliary at the time Appellant alleged he was involved in the burglaries. Appellant argues the prosecution violated the requirements of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose this information before trial, as it established the falsity of Appellant's confession to the Quasar Court burglary.

We review a trial court's decision to grant a motion for new trial under an abuse of discretion standard. *See State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App. 1993); *State v. Ordonez*, 156 S.W.3d 850, 851 (Tex.App--El Paso 2005, pet. ref'd). We will reverse only after concluding the trial court's action was arbitrary, and without reference to any guiding rules or principles of law, resulting in a decision which clearly lies outside the zone of reasonable disagreement. *See Ordonez*, 156 S.W.3d at 851.

A *Brady* violation occurs when the prosecution withholds exculpatory evidence which is unknown to the defense during trial. *See Hayes v. State*, 85 S.W.3d 809, 814-15 (Tex.Crim.App. 2002). The *Brady* rule does not apply when the appellant is already aware of the allegedly withheld information. *Id.* at 815, *citing Havard v. State*, 800 S.W.2d 195, 204 (Tex.Crim.App. 1989). When, as in this case, the appellant is aware of the existence and contents of the challenged evidence because the confession was his own statement, the case does not fall within the *Brady* rule. *Hayes*, 85 S.W.3d at 815. Because this case does not implicate the *Brady* rule, the trial court did not abuse its discretion by denying Appellant's motion for an evidentiary hearing on that basis. Issue One is overruled.

In Issue Six, Appellant argues that the State violated the *Brady* rule by failing to provide Appellant with pretrial notice that Officer Guevara would testify that the other burglaries identified in Appellant's confession, may have occurred but were simply not reported to the El Paso Police Department. Appellant contends the officer's trial testimony was inconstant with his suppression testimony, during which the officer stated that the extraneous burglaries were "bogus" and did not exist. However, Appellant's trial counsel failed to move for a continuance based on the alleged *Brady* violation and therefore failed to preserve the issue for our review. *See Wilson v. State*, 7 S.W.3d 136, 146 (Tex.Crim.App. 1999). Accordingly, we overrule Issue Six.

In Issue Three, Appellant argues that the prosecution's reliance on his confession, despite the State's knowledge that much of the information was false, violated his right to due process. Appellant basis his argument on the principle that a criminal defendant's due process rights are violated when the State allows false evidence to remain uncorrected in front of the jury. *See Ex*

*parte Castellano*, 863 S.W.2d 476, 481 (Tex.Crim.App. 1993), *citing Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 341, 79 L.Ed. 791 (1935), and *Alcorta v. Texas*, 355 U.S. 28, 30-31, 78 S.Ct. 103, 105, 2 L.Ed.2d 9 (1957).

While Appellant's general statement of the law is correct, the record in this case shows that the jury was presented with extensive testimony from Officer Guevara during the State's presentation of evidence, on the inaccuracies contained in Appellant's confession. During the State's direct-examination, Officer Guevara testified that he attempted to located Sy Smith, and discovered that he was stationed in Germany with the United States Army at the time the Quasar Court burglary occurred. Officer Guevara further testified that following Appellant's confession, he attempted to located police reports for the additional burglaries Appellant discussed and stated that there were no such records on file with the police department. Defense counsel also questioned Officer Guevara at length about the falsities in the confession, and again the officer testified that much of the information in the statement was inaccurate. Based on the officer's testimony, the jury was fully informed as to the accuracy of the contents of Appellant's confession. Therefore, this case does not implicate the type of due process concerns addressed in *Mooney* and its progeny. Accordingly, Issue Three is overruled.

In Appellant's fifth issue, he contends that he was deprived of his constitutional right to effective assistance of counsel by his trial attorney's failure to have his confession, "stricken from the record' after exculpatory evidence surfaced which established that the Quasar Court burglary could not have occurred, as related by Appellant in his written confession.

A claim of ineffective assistance of counsel consists of two components. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The appellant

must establish both that his trial counsel performed deficiently, and that the deficiency caused him prejudicial harm. *Id*. When evaluating trial counsel's performance under the first prong, the reviewing court must not second-guess legitimate strategic or tactical decisions made in the midst of trial. *Id*. at 689, 104 S.Ct. 2065. Instead a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance must be indulged. *Id*. Absent a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that the attorney's performance was constitutionally adequate. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005). Unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it'" the constitutional standard is not offended. *Id*.

Any allegation of ineffectiveness must be firmly grounded in the record. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999). It is the appellant's burden to demonstrate both deficient performance and prejudice, by a preponderance of the evidence. *See Thompson*, 9 S.W.3d at 813. The reviewing court must consider the totality of the representation and the particularities of each case in evaluating effectiveness. *Id*.

In this case, Appellant filed a motion for new trial but did not assert ineffective assistance of counsel as a basis for the motion. There is no evidence in the record before us to rebut the presumption that trial counsel acted within the range of effective assistance. Therefore, Issue Five is overruled.

Issues Four and Seven challenge the trial court's denial of Appellant's motion to suppress his written confession. A trial court's ruling on a motion to suppress is reviewed using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex.Crim.App. 1997);

*Newbrough v. State*, 225 S.W.3d 863, 866 (Tex.App.--El Paso 2007, no pet.). While we review questions of law *de novo*, the trial judge's determination on historical facts is given almost total deference. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002), *cert. denied*, 537 U.S. 1051, 123 S.Ct. 603, 154 L.Ed.2d 527 (2002). In cases such as this one, where we do not have the benefit of the trial court's findings of fact, we will view the evidence in the light most favorable to the trial court's ruling. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000).

In Issue Four, Appellant asserts that his confession should have been suppressed based on his showing that there was an unnecessary delay in taking him before a magistrate as required by Articles 14.06 and 15.17 of the Texas Code of Criminal Procedure. Appellant argues that the eight-hour delay before he was taken to a magistrate was unreasonable, and that there is "a causal connection between this delay and the written confession he gave to Officer Guevara."

While there is no doubt that an a criminal suspect has a right to be taken before a magistrate to be advised of his rights, "without unnecessary delay," a failure will not invalidate evidence gathered from the detention absent proof of a causal connection between the delay and the gathering of the evidence. *See Cantu v. State*, 842 S.W.2d 667, 680 (Tex.Crim.App. 1992). Here Appellant argues summarily that he can demonstrate that he gave a written statement which contained multiple inaccuracies. Without citation to authority, Appellant concludes that the trial court therefore erred in denying his motion to suppress. Without expressing an opinion as to whether the eight-hour delay was in fact unreasonable in this case, we hold that Appellant has failed to establish that the delay contributed to his confession. *See Cantu*, 842 S.W.2d at 680. Accordingly, Issue Four is overruled.

In Issue Seven, Appellant asserts the trial court erred in finding his confession was voluntary. He argues that Officer Guevara's testimony that the extraneous burglaries described in the confession were "bogus," in addition to Appellant's testimony that he was coerced into signing the statement by police threats established that the statement was involuntarily made and therefore, inadmissible.

When reviewing the voluntariness of a confession, almost total deference must be given to the trial court's determination of historical facts in a suppression hearing. *Ross*, 32 S.W.3d at 856. The appellate court must also review the evidence in the light most favorable to the trial court's ruling, and cannot reverse that ruling absent a clear abuse of discretion. *See Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex.Crim.App. 2000). The trial court is the sole trier of fact in a suppression hearing, and as such, it may choose to believe or disbelieve any part of a witness's testimony. *Fineron v. State*, 201 S.W.3d 361, 365 (Tex.App.--El Paso 2006, no pet.).

Prior to trial, Appellant filed a motion to redact all references to the extraneous burglaries from his written confession, arguing the confession was not made voluntarily. The trial court denied Appellant's motion and entered findings: (1) that Appellant gave a written and incriminating statement to Officer Guevara; (2) that Appellant was warned of his Miranda rights prior to making the statement; (3) that Appellant was no coerced into making the statement; (4) that Appellant was not under the influence of drugs or alcohol at the time he made his statement; (5) that Appellant's decision to make the statement was not influenced by a failure to be brought before a magistrate, "or by any other factor other than the desire to give the statements;"and (6) that Appellant cooperated with law enforcement without coercion of any kind.

Appellant argues there was evidence of "strong coercive influences (to include both

threats and promises) made to induce Appellant to confess to crimes he did not commit." The only evidence in the record which indicates Appellant's statement may have been coerced is Appellant's own testimony that the police promised he would be released to his father if he cooperated, that if he did not admit to the extraneous burglaries they would see to it that years were added to his sentence, that he was denied water and food, and that he was exhausted to the point of falling asleep during Officer Guevara's interview.

The court also heard testimony from Officer Guevara that Appellant was advised of his rights at the outset of the interview, and that Appellant offered to show the officers the sites of other burglaries without any prompting. Officer Guevara stated that he did not witness Appellant fall asleep during the interview, and denied that Appellant was offered any deferential treatment for his cooperation. Appellant's confession is initialed at the beginning of each paragraph "GAG," and states that he was informed of his rights by Officer Guevara prior to beginning the statement.

As the sole judge of witness credibility, the trial court was within its discretion to disregard Appellant's testimony. *See Fineron*, 201 S.W.3d at 365. The trial court's findings are supported by Officer Guevara's testimony as well as the record of Appellant's confession. Therefore the trial court did not err by holding Appellant's confession was voluntary. Issue Seven is overruled.

In Issue Eight, Appellant contends the trial court committed reversible error by admitting State's Exhibit Eleven, a computer printout of the "pawn database" entry made by Atlas Pawn for the equalizer. Appellant argues the exhibit is inadmissible hearsay, and lacks the type of indicators of reliability required for the document to fall within the "Document Affecting an

-11-

Interest in Property" exception under Rule 803.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex.Crim.App. 2005). The trial court abuses its discretion only when its ruling lies "outside the zone of reasonable disagreement." *Apolinar*, 155 S.W.3d at 186. Hearsay statements are generally not admissible unless the statement falls within a recognized exception to the hearsay rule. *Walters v. State*, 247 S.W.3d 204, 217 (Tex.Crim.App. 2007). Texas Rules of Evidence 803 provides a list of exceptions to the hearsay rule regardless of the availability of the declarant to testify. *See* TEX.R.EVID. 803. Exception number fifteen under Rule 803 provides an exception for "Statements in Documents Affecting an Interest in Property." Paragraph fifteen states:

> A statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document.

TEX.R.EVID. 803(15).

Exhibit Eleven was introduced through the testimony of El Paso Police Department property disposition specialist Ida Silva. Ms. Silva testified that she was a member of the department's pawnshop unit, which is charged with monitoring pawnshops for stolen property. According to her testimony, pawn shops have two options for reporting and tracking merchandise; they can report electronically with the department's database or they can use hard copies which are only maintained for one year before they are destroyed.

Atlas Pawn utilized both methods for recording its items. Ms. Silva was not able to locate the hard copy of the pawn ticket for the equalizer as it had been destroyed in accordance

with an El Paso records retention schedule. She was able to locate an electronic record of the pawn from the police department's pawnshop database. She testified that State's Exhibit Eleven was an electronic copy of the pawn ticket containing the information recorded by Atlas Pawn when the equalizer was pawned. Pawn ticket number 10076 was located in the pawn shop database based on the equalizer's serial number, and shows the item was pawned at "Atlas" by "Gregg A. Gomez" on June 4, 2004. Ms. Silva further testified the pawnshop is required to record identifying information for any person who pawns or sells an item by statute in order to verify the identity of people purporting to pawn their own property.

Ms. Silva's testimony provides an adequate foundation for the trial court to have determined Exhibit Eleven was reliable. The document was not "created by Atlas Pawn for use by the El Paso Police Department" as Appellant contends. The data was entered into the computer system by the pawn shop in accordance with Texas law, and transferred to a police database where it was retrieved by a police department employee. In addition, as Ms. Silva explained, the document memorializes Appellant's transferred whatever ownership right he had in the equalizer to the pawn shop. As such, the trial court did not abuse its discretion by determining the document fell within the exception presented by the State.

In the alternative, if we were to conclude that the document did not fall within the hearsay exception, Appellant's issue must still be overruled as the error was harmless. Although Appellant does not address the issue in his brief, evidentiary error does not constitute reversible error absent harm to the defendant's case. *See* TEX.R.APP.P. 44.2(b). That is, so long as the record as a whole shows that the defendant's substantial rights were not affected by the error, the appellant is not entitled to reversal. *See Ramon v. State*, 159 S.W.3d 927, 931 (Tex.Crim.App.

-13-

2004). In this case, the jury heard testimony during Appellant's case in chief from Atlas Pawn Manage Joe Rios, identifying the equalizer as the item sold to him at Atlas Pawn by Appellant. In fact, Appellant himself admitted that he pawned the equalizer at Atlas Pawn. Because the same information contained in Exhibit Eleven was also presented to the jury without objection, any error was harmless. *See Ramon*, 159 S.W.3d at 931. Therefore Issue Eight is overruled.

Finally, in Issue Two, Appellant asserts that the evidence is legally insufficient to sustain his conviction for burglary of a habitation. In a legal sufficiency review we must consider all of the evidence in a light most favorable to the verdict, and determine whether a reasonable minded juror could have found the essential elements were proven beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). We must give deference to "'the responsibility of the trier of fact to fairly resolve all conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper*, 214 S.W.3d at 13. The reviewing court may not re-evaluate the weight and credibility of the evidence, nor may we substitute our own judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). Any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000).

A person commits a burglary of a habitation if, without the effective consent of the owner, he enters a habitation with the intent to commit a felony, theft, or an assault; or remains concealed in a habitation with the intent to commit a felony, theft, or an assault. TEX.PENAL CODE ANN. § 30.02(a)(1), (2)(Vernon 2003). Appellant argues that several falsehoods contained in his written confession, as well as the complaining witness's inability to identify the pawned equalizer through a serial number, left the jury without evidence from which they could

reasonably conclude that Appellant was guilty. We disagree.

Because the jury was permitted to consider Appellant's confession in its entirety, we must also take the entire statement into account in our legal sufficiency review. *See Moff v. State*, 131 S.W.3d 485, 488 (Tex.Crim.App. 2004). As the fact finder, the jury had the right to accept or reject all or any part of Appellant's statement in its role as the sole judge of witness credibility and the weight to be given testimony. *See Margraves v. State*, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000). Although there may have been inconsistencies in Appellant's statement, the jury could have reasonably concluded that Appellant admitted to the Quasar Court burglary because he had taken part in the crime. In addition, when viewed in the light most favorable to the verdict, the evidence related to the source of the equalizer could lead a reasonably minded jury to conclude that Appellant was in possession of and pawed stolen property. As such, the evidence was legally sufficient to support Appellant's conviction for burglary of a habitation. Issue Two is overruled.

The judgment of the trial court is affirmed.

December 16, 2009

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ
Carr, J. (Not Participating)

(Do Not Publish)