COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| NESTOR NUNEZ, | | No. 08-09-00047-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 243rd Judicial District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20070D03092) |
| | § | |
| | § | |

**O P I N I O N**

This is an appeal from a conviction for possession of four grams or more, but less than two-hundred grams, of a controlled substance. In one issue on appeal, Appellant argues that the State failed to prove that there was reasonable suspicion to conduct a traffic stop on him; thus, all of the evidence seized as a result of the stop was inadmissible as the fruit of an illegal search.

Detective Sergio Lopez was surveilling 3104 Manny Aguilera Drive in El Paso, Texas, on March 6, 2007, because he suspected a narcotics supplier lived there. During his surveillance, Detective Lopez saw Appellant drive up to and go inside the house. Appellant was inside for two to three minutes and then left. Detective Lopez believed that Appellant was at the house to conduct a narcotics transaction. Detective Lopez asked Officers Carlos Mata and Miguel Chavez, who were nearby in a marked unit, to check the license plates of Appellant's car. The computer in the officers' car showed that the registration had expired. The officers followed Appellant's car, verified that its license plate number was the same one Detective Lopez had

seen, and then initiated a traffic stop on Appellant.

Officer Mata informed Appellant as to why he was being stopped, asked him where he had been, and requested his driver's license and proof of insurance. Appellant told Officer Mata that he was on his way back from working out-of-town, but Officer Mata did not believe this was completely true. Officer Mata gave Appellant's driver's license to Officer Chavez for him to check if Appellant had any outstanding warrants. After Officer Mata obtained Appellant's driver's license and proof of insurance, but before the warrants check was completed, Appellant consented to the search of his vehicle. While Appellant completed a consent to search form, Officer Chavez ran a license and warrants check.

The officers searched Appellant's vehicle, but did not find any evidence pertaining to the case. About fifteen-to-twenty minutes later, a K-9 officer arrived on scene. The K-9 officer conducted an exterior search of Appellant's car with his narcotics dog, and the dog alerted to the presence of narcotics. The dog also alerted to the driver's seat once he was inside the car, and when the K-9 officer pulled back the seat's fabric, he found several bags of narcotics.

Appellant was indicted for possession of, with the intent to deliver, a controlled substance in the amount of four grams or more, but less than 200 grams. He pled not guilty. Appellant filed four motions to suppress.[1] At trial, Officer Chavez testified he checked the registration on

_____

[1] The first motion was to suppress any inadmissible written and oral confessions or statements. The second motion was to suppress any physical evidence partially on the basis that "[t]he seizures were the product of an illegal search of the Defendant not supported by reasonable suspicion and/or an illegal arrest of the Defendant not supported by probable cause." The third motion was to suppress any identifications of Appellant "by a group of witnesses in a one on one show-up conducted several hours after he [sic] alleged time and date of the offense" on the basis that such conduct violated Appellant's constitutional rights. Appellant is challenging the denial of his motion to suppress physical evidence in this appeal. The fourth motion was to suppress evidence during trial based on a number of grounds, including the previous motion to suppress

Appellant's vehicle via a computer in his patrol unit, which showed the registration was expired. However, certain evidence at trial also showed that Appellant's car displayed a valid registration sticker with an expiration date of February 2008, and that he had renewed the registration on March 2, 2007. The trial court stated it had no doubt that the officers got a report indicating that the registration was deficient, and that this was not a pretext stop. But the trial court also believed that the officers checked the registration sticker on Appellant's vehicle, and that once they did so, the registration was validated, and so the reason for the stop based on a supposedly invalid registration ceased at that point. Nevertheless, the court denied Appellant's motion to suppress.

After a jury trial, Appellant was convicted of the lesser-included offense of possession of a controlled substance in an amount of four grams or more, but less than 200 grams. Appellant elected to be sentenced by the court, and was sentenced to ten years' imprisonment and assessed a $2,500 fine. But the sentence was suspended, and Appellant was placed on ten years' of community supervision.

In his sole issue, Appellant contends the court erred in denying his motion to suppress the evidence because the stop of his vehicle violated the Fourth and Fourteenth Amendments to the United States Constitution. Appellant argues that because there was a lack of reasonable suspicion, the stop and seizure of his vehicle and person were illegal and that the court therefore erred in denying his motion to suppress all fruits of the illegality.

We review a ruling on a motion to suppress using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex.Crim.App. 1997); *Newbrough v. State*, 225 S.W.3d 863, 866

physical evidence, and any evidence obtained as a result of the illegal stop.

(Tex.App.--El Paso 2007, no pet.). While we review *de novo* mixed questions of law and fact that do not depend on credibility or demeanor of witnesses, we review purely factual questions that depend on credibility or demeanor of witnesses for an abuse of discretion. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); *Guzman*, 955 S.W.2d at 89. We must afford almost total deference to the trial court's determination of issues of historical fact and its application of the law to fact issues that turn on determinations of witnesses' credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). The trial judge is the sole trier of facts and judge of the witnesses' credibility, as well as the weight attributed to their testimony. *State v. Hopper*, 842 S.W.2d 817, 819 (Tex.App.--El Paso 1992, no pet.). We must view the evidence in the light most favorable to the court's ruling, and we cannot reverse the court's decision on the admissibility of evidence absent a clear abuse of discretion. *Wiede v. State*, 214 S.W.3d 17, 24-5 (Tex.Crim.App. 2007); *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex.Crim.App. 2000); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). If, as in this case, no findings of fact were filed, we must view the evidence in the light most favorable to the trial court's ruling, and will uphold the ruling on any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000).

Appellant challenges the stop based on the narcotics investigation.[2] He contends that ten visits by unknown persons to a suspected residence, which was under surveillance over the course of a month, coupled with the retrieved items from the residence's trash, fail to establish reasonable suspicion as to his activities because he only "briefly visited the residence on one

_____

[2] At trial, the State argued two bases for the stop of Appellant's vehicle: (1) the narcotics investigation of the Manny Aguilera Drive residence where Detective Lopez observed Appellant; and (2) the expired registration on Appellant's vehicle.

occasion." Because the officers lacked reasonable suspicion to stop his car, Appellant asserts the subsequent search of his vehicle was illegal.

When a police officer stops a defendant without a warrant and without the defendant's consent, the State has the burden at a suppression hearing of proving reasonableness of the stop. *Ford v. State*, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005). A police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of "probable cause." *See Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). The reasonable suspicion determination is based on the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App. 1997). A police officer must have specific articulable facts that, in light of his experience and personal knowledge, together with inference from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Id*. at 38. There is no requirement that a particular statute be violated to give rise to reasonable suspicion. *See Terry*, 392 U.S. at 22-3, 88 S.Ct. at 1881.

It is a traffic violation in Texas to operate a motor vehicle that has not been registered as required by law. *See* TEX.TRANSP.CODE ANN. § 502.402 (West 2007). When a traffic violation is committed within a police officer's view, the officer may lawfully stop and detain the person for the violation. *Walter v. State*, 28 S.W.3d 538, 542 (Tex.Crim.App. 2000); *Krug v. State*, 86 S.W.3d 764, 765 (Tex.App.--El Paso 2002, pet. ref'd). No additional probable cause or reasonable suspicion is required. *See Walter*, 28 S.W.3d at 542. A peace officer may arrest, without warrant, a person found committing a violation of the Texas traffic laws because a

violation of the traffic laws constitutes probable cause to arrest the violator. *See* TEX.CODE CRIM.PROC.ANN. art. 14.01(b)(West 2005)(stating that "peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view."). When an officer has probable cause to arrest a driver for a traffic offense, the officer may search not only the driver, but also the automobile's interior. *State v. McCall*, 929 S.W.2d 601, 604 (Tex.App.--San Antonio 1996, no pet.).

On appeal, the State asserts the officers had reasonable suspicion to stop Appellant solely on the basis of the registration of Appellant's vehicle.[3] The State argues that as part of this routine traffic stop, the officers were entitled to request certain information from the driver, such as a driver's license, and to conduct a computer check on that information. The State claims that it is "only after this computer check is completed and the officer knows that the driver has a currently valid license, no outstanding warrants, and the car is not stolen that the traffic-stop investigation is fully resolved." Because Appellant consented to a search of his car before the license and warrant check was completed, the State claims that this voluntary consent was a valid justification to detain him for the search of his car.

In support of its argument that the stop was valid based on the registration of Appellant's vehicle, the State directs us to *Kothe v. State*, which the State asserts has the holding that a traffic stop investigation does not end until after an officer completes a computer check and determines whether the driver has a valid license, outstanding warrants, and that his car is not stolen. *See Kothe v. State*, 152 S.W.3d 54, 63-4 (Tex.Crim.App. 2004). The State contends that based on

---

[3] Based on our review of the record, we agree with the State that contrary to Appellant's contention, the State did not concede the vehicle's registration as a basis of the stop at trial.

*Kothe*, an "officer may conduct the license and warrant check even after the officer has determined that the motorist is not guilty of the violation for which he or she was originally stopped," and so in this case, even if the officers later determined that Appellant's registration was valid, "the traffic stop was not over until they had completed the license and warrant check."

In traffic stop situations, the officer may perform certain activities that are incident to the stop, including demanding identification, a valid driver's license, proof of insurance, and checking for outstanding warrants. *See Kothe*, 152 S.W.3d at 63-4; *Davis v. State*, 947 S.W.2d 240, 245 n.6 (Tex.Crim.App. 1997). The traffic-stop investigation is fully resolved only after conducting a computer check on such information, "and the officer knows that this driver has a currently valid license, no outstanding warrants, and the car is not stolen . . . ." *Kothe*, 152 S.W.3d at 63-4. At that point, the detention must end, and the driver must be permitted to leave. *Kothe*, 152 S.W.3d at 63-4.

In *Kothe*, an officer stopped the motorist defendant after initially deciding that he was intoxicated while driving. *See Kothe*, 152 S.W.3d at 58. After the officer had already started the warrant check process, he determined the motorist was in fact not intoxicated based on the results of a field sobriety test. *See id*. at 58, 66. The Court of Criminal Appeals concluded that the officer's continued detention of the motorist after determining the motorist was not intoxicated, while awaiting the results of a computer search for outstanding warrants, was reasonable under the Fourth Amendment. *See id*. at 66. In reaching this conclusion, the Court reasoned:

> The trial court did not find that the deputy initiated the warrant check after determining that Mr. Kothe was sober. Rather, Deputy Forslund merely awaited the results of the warrant check that was already underway when he determined that Mr. Kothe was not intoxicated. Therefore, it is highly unlikely that Deputy Forslund was using the warrant check solely as means to purposely extend the

detention. Rather, he was simply completing a regular component of a routine traffic stop.

*Kothe*, 152 S.W.3d at 66.

Because the trial court in this case did not file any findings of fact, we view the evidence in the light most favorable to the court's ruling and will uphold the ruling on any theory of law applicable to the case. *See Ross*, 32 S.W.3d at 855-56. Viewing the evidence in the light most favorable to the court's ruling, the officers in the instant case received information that the registration of Appellant's vehicle was expired, and then proceeded to conduct a stop on Appellant for the deficient registration. Because the officers obtained information that the registration of Appellant's vehicle was invalid, they lawfully stopped his vehicle. *See* TEX.CODE CRIM.PROC.ANN. art. 14.01(b); TEX.TRANSP.CODE ANN. § 502.402; *Walter*, 28 S.W.3d at 542; *Krug*, 86 S.W.3d at 765. As part of the routine traffic stop, the officers were entitled to demand Appellant's driver's license and proof of insurance and to determine whether he had any outstanding warrants. *See Kothe*, 152 S.W.3d at 63-4; *Davis*, 947 S.W.2d at 245 n.6. Because the officers had initiated the warrant check process, even if they later determined that Appellant's registration was indeed valid, their continued detention of Appellant while waiting for their computer check for outstanding warrants to complete, was reasonable. *See Kothe*, 152 S.W.3d at 66. Moreover, there was no dispute that Appellant consented to a search of his vehicle prior to the completion of the warrant check. Therefore, we presume that his consent was valid. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36 L.Ed.2d 854 (1973); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex.Crim.App. 2002); *Riordan v. State*, 905 S.W.2d 765, 770 (Tex.App.--Austin 1995, no pet.)(valid consent to search is a well-established exception to

constitutional requirements of warrant and probable cause). Having obtained his consent, the officers did not violate Appellant's Fourth and Fourteenth Amendment rights. *See id*. Accordingly, we conclude the trial court did not err in denying Appellant's motion to suppress, and we overrule Appellant's sole issue.

Having overruled Appellant's issue presented for review, we affirm the trial court's judgment.


March 9, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)