COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-09-00278-CR |
| Appellant, | § | Appeal from the |
| V. | § | County Criminal Court at Law No. 4 |
| ROCKY CEDILLO, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20080C14397) |
| | § | |
| | § | |

**O P I N I O N**

Appellee was charged by information with the offense of driving while intoxicated. He filed a pretrial motion to suppress evidence of the offense, and after a hearing, the court granted the motion to suppress. On appeal, the State contends the court erred in granting the motion by basing its decision as to where the stop occurred. We affirm.

Officer Jose Alvarez claimed that he observed Appellee's vehicle traveling north on Copia and approaching Yandell in the early morning hours of October 31, 2008. He testified that Appellee then turned right onto Yandell, without stopping at the red light at the intersection of Copia and Yandell. Officer Alvarez then turned on the emergency lights of his patrol unit, and began following Appellee. Appellee continued on Yandell, and turned left onto Stevens, where the traffic stop occurred. Officer Alvarez testified that on approaching Appellee during the stop, he noticed Appellee had slurred speech and a strong odor of alcohol. After the incident, Appellee was charged by information with driving while intoxicated.

Appellee subsequently filed a motion to suppress, arguing among other things, that

Officer Alvarez had detained him without reasonable suspicion. In September 2009, the trial court held a hearing on Appellee's motion to suppress. At the conclusion of the hearing, the court determined that Appellees' witnesses testified credibly. Although the court indicated that it did not "dispute the credibility of [Officer Alvarez]," the court felt "uncomfortable with . . . his accuracy," and was "not convinced as to [Officer Alvarez's] accuracy with respect to where the stop was made." The court also stated: "when I balance [the credibility of Appellee's witnesses] against the credibility of the police officer, and what I feel to be perhaps inaccurate or confused testimony, I feel compelled to go ahead and grants [sic] the State's [sic] Motion to Suppress, on the basis of the stop." The court thereafter signed a written order granting Appellee's motion to suppress.

In its sole issue, the State asserts the trial court erred in granting Appellee's motion to suppress because the court made certain findings that show a lawful basis for the traffic stop existed.

We review a ruling on a motion to suppress using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85, 87-91 (Tex.Crim.App. 1997); *Newbrough v. State*, 225 S.W.3d 863, 866 (Tex.App.--El Paso 2007, no pet.). While we review *de novo* mixed questions of law and fact that do not depend on credibility or demeanor of witnesses, we review purely factual questions that depend on credibility or demeanor of witnesses for an abuse of discretion. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); *Guzman*, 955 S.W.2d at 89. We must afford almost total deference to the trial court's determination of issues of historical fact and its application of the law to fact issues that turn on determinations of witnesses' credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex.Crim.App. 2007). The trial judge is the sole trier of

facts and judge of witnesses' credibility, as well as the weight attributed to their testimony, at a suppression hearing. *State v. Hopper*, 842 S.W.2d 817, 819 (Tex.App.--El Paso 1992, no pet.). When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the court's ruling, and we cannot reverse the court's decision on the admissibility of evidence absent a clear abuse of discretion. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007); *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex.Crim.App. 2000); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). If, as in this case, no findings of fact were filed, we must view the evidence in the light most favorable to the trial court's ruling, and will uphold the ruling on any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000).

The State contends Appellee was stopped because he violated Section 544.007(d) of the Texas Transportation Code, which provides:

> An operator of a vehicle facing only a steady red signal shall stop at a clearly marked stop line. In the absence of a stop line, the operator shall stop before entering the crosswalk on the near side of the intersection. A vehicle that is not turning shall remain standing until an indication to proceed is shown. After stopping, standing until the intersection may be entered safely, and yielding right-of-way to pedestrians lawfully in an adjacent crosswalk and other traffic lawfully using the intersection, the operator may:
>
> (1)    turn right; or
>
> (2)    turn left, if the intersecting streets are both one-way streets and a left turn is permissible.

TEX.TRANSP.CODE ANN. § 544.007(d)(West 2011).

According to the State, the trial court made "several important findings," including the finding that the officer possessed sufficient reasonable suspicion to stop and investigate

Appellee's vehicle, the finding that a red light violation occurred, and the finding that there was dispute with Officer Alvarez's testimony only to the extent that his testimony regarding where the stop occurred was inaccurate. The State argues that because the trial court concluded the stop was justified, and the court was merely "uncomfortable with Officer Alvarez's accuracy as to where the traffic stop occurred," it erred in granting Appellee's motion to suppress.

We first note that we disagree with the State's interpretation of the record. The reporter's record shows that at the conclusion of the suppression hearing, the court stated:

> [A]ccording to the testimony presented by Officer Alvarez, there was, in fact, by his testimony . . . sufficient reasonable suspicion to stop and investigate the automobile driven as he reported. There was a red light violation. The red light violation apparently took place at Copia and Yandell and the stop eventually was made at Copia and Stevens . . . .
> I do not dispute the credibility of the police officer. What I do dispute, and what I am uncomfortable with, is his accuracy.
> The three witnesses that testified on behalf of the defendant testified, and I think, credibly, that the stop was, in fact, at Yandell and Stevens. And I find the testimony credible that the passengers in the vehicle as well as the driver was coming south on Highway 54, turning left on Montana, and eventually turning left through the access road, turning west onto Yandell.
> I am not convinced as to the officer's accuracy with respect to where the stop was made . . . I think the police officer . . . appears to be confused or at least not accurate as to where the stop was actually made.

The court indicated that after it balanced the credibility of the defense's witnesses against that of Office Alvarez, it decided to grant Appellee's motion to suppress. Contrary to the State's assertions, the trial court did not make the specific findings that Officer Alvarez had sufficient reasonable suspicion to stop and investigate Appellee's vehicle, or that a red light violation occurred in this case. The court merely made these statements to reiterate Officer Alvarez's testified version of the events that occurred on the night in question.

When a police officer stops a defendant without a warrant and without the defendant's

-4-

consent, the State has the burden at a suppression hearing of proving reasonableness of the stop. *Ford v. State*, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005). A police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks evidence rising to the level of "probable cause." *See Terry v. Ohio*, 392 U.S. 1, 20-1, 88 S.Ct. 1868, 1879-80, 20 L.Ed.2d 889 (1968). The reasonable suspicion determination is based on the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App. 1997). A police officer must have specific articulable facts which, in light of his experience and personal knowledge, together with inference from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Id*. There is no requirement that a particular statute is violated in order to give rise to reasonable suspicion. *See Terry*, 392 U.S. at 22-23, 88 S.Ct. at 1880-81. However, an inarticulate hunch, suspicion, or good faith of the officer is never sufficient to justify the officer in ordering a subject to stop his vehicle. *Hoag v. State*, 728 S.W.2d 375, 380 (Tex.Crim.App. 1987); *Young v. State*, 133 S.W.3d 839, 841 (Tex.App.--El Paso 2004, no pet.).

Because the trial court in this case did not file findings of fact and conclusions of law, we must determine whether the evidence, viewed in the light most favorable to the trial court's decision to grant the motion to suppress, supports implied findings supporting that decision. *See State v. Kelly*, 204 S.W.3d 808, 819 (Tex.Crim.App. 2006); *Ross*, 32 S.W.3d at 855-56. In other words, we must determine whether Officer Alvarez testified to specific, articulable facts justifying Appellee's detention. *See Kelly*, 204 S.W.3d at 819.

Officer Alvarez, the State's only witness, was the first witness to testify. On direct

examination, he testified that he observed Appellee "traveling on the second lane going up North Copia . . . coming up to the intersection of Yandell," and after continuing north on Copia, Appellee allegedly ran a red light, after which he made "a right-hand turn on Yandell." Officer Alvarez testified that he was going in the same direction Appellee was, and drove right behind Appellee. On cross-examination, the following exchanges between defense counsel and Officer Alvarez occurred:

> Q. You said you were coming from North Copia?
>
> A. Yes, sir. I was going north on Copia.
>
> Q. And when did you first see my client?
>
> A. Where did I first see him?
>
> Q. When you first see him.
>
> A. It must have been around the 1100 block of Copia.
>
> Q. Before that, where were you?
>
> A. I was just traveling north on Copia.
>
> Q. From where? From where were you driving?
>
> A. I was coming from Alameda. It was either I-10 or Alameda. I don't recall.
>
> .        .        .
>
> Q. Did you happen to notice where [the defendant] said he was coming from?
>
> A. I do recall him saying that he was going to go drop off his friend, which was in the passenger's side. And I recall the friend lived on Montana somewhere.
>
> Q. So you recall his friend who lived on Montana?
>
> A. Yeah, because he stated that he was going to go drop his friend off.

Q.      Right.  Montana is–I guess–to get to Montana you'd have to travel from where to where?

A.      North on Copia, where he was going.

Q.      You wouldn't turn right on–you wouldn't turn right, would you?  You would turn left, wouldn't you, on Yandell?
        If you're trying to get to Montana Street, you don't have to take a right on Yandell the way you claim they did, right?

A.      Yes.

Q.      That wouldn't make sense, right?

A.      No, it wouldn't.

                        .          .          .

Q.      And, of course, you say that he took a right on Yandell, or this is traveling, I guess, east, right?

A.      That would be East Yandell.

Q.      You're saying he took an east turn on Yandell, correct?

A.      He made a right turn on Yandell, yes.

Q.      When did you turn on your lights?

A.      As soon as I approached the intersection and I made a right–yes, a right on Yandell.

Q.      Then you turned on your lights?

A.      Yes.

Q.      How far behind him were you from him–the distance from his car–after he took a, I guess, left turn on Stevens?  Did you say he took a left turn on Stevens?

A.      No, I said he took a right–I'm sorry, he took a left.  You're correct.  A left on Stevens.

-7-

.        .        .

Q.    Okay.  You say he took a left on Stevens, or north on Stevens?

A.    It's a left, north on Stevens.

Q.    And where did he pull over?

A.    Right there at the intersection of Yandell and Stevens.

Q.    Facing–which way was his car facing?

A.    Facing north.

Q.    So are you saying it makes sense for someone who is being pulled over to take a left–it doesn't make sense, does it, for someone to pull over while they're taking a left turn, right?  It makes more sense for the car to pull over on Yandell, correct?

A.    (No answer.)

Q.    Would you agree that it makes more sense for a vehicle to be pulled over on the street they're traveling on if you're pulling them over?

A.    I don't know if he saw me or not, behind him.

Q.    Well, he stopped, right?

A.    Yeah, he stopped on Stevens and Yandell.

Q.    So obviously he saw you then, right?

A.    Yes.

Q.    So wouldn't it make more sense, sir, for someone to pull over on Yandell versus making a left turn on Stevens?

.        .        .

A.    I don't know if he saw me or at what point did he see me.  I don't know.

Again, according to Officer Alvarez's testimony, Appellee was driving north on Copia on the night in question, turned right onto Yandell, running a red light as he turned.  Contrary to

-8-

Officer Alvarez's testimony, Appellee and all of his witnesses testified that Appellee drove south on Highway 54, and eventually turned west or right onto Yandell. They testified that they came down from northeast El Paso via I-54, and took the Montana exit in order to reach Appellee's friend's house on Yandell because that was the only direct exit to Yandell. According to Appellee's witnesses, once they turned right onto Stevens from Yandell, they saw the lights of Officer Alvarez's patrol unit behind them. Appellee's witnesses also testified that Appellee never drove off of I-10 on the night in question, that he did not reach Copia, and that he did not run a red light prior to being stopped.

We disagree with the State in its assertion that the trial court decided to grant Appellee's motion to suppress because the court was merely uncomfortable with Officer Alvarez's testimony regarding where the stop occurred. Based on our review of the record, there was no dispute at trial that the stop occurred at the intersection of Yandell and Stevens. The dispute was with regards to whether Appellee was driving north on Copia or west on Yandell when Officer Alvarez observed the alleged traffic violation. Giving due deference to the trial court's implicit fact findings and determination of the historical facts, particularly where the court attributed more credibility to the defense's witnesses, we conclude that Appellee did not run a red light at the Copia and Yandell intersection, contrary to what Officer Alvarez had testified, because Appellee never reached Copia. *See Amador*, 221 S.W.3d at 673. Because Appellee's alleged failure to stop for the red light constituted the only basis for the officer's reasonable suspicion to justify the traffic stop, the determination that Appellee in fact did not run a red light establishes that the officer lacked reasonable suspicion to stop Appellee's vehicle. Therefore, the trial court did not err in granting Appellee's motion to suppress. We overrule the State's sole issue and

affirm the trial court's judgment.

June 15, 2011

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)