**Joseph FINERON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–04–00301–CR.**

Court of Appeals of Texas,
El Paso.

Aug. 31, 2006.

---

Jaime E. Gandara, El Paso, for Appellant.

Jaime E. Esparza, District Attorney, El Paso, for Appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal from a jury conviction for theft aggregated to an amount greater than $1,500 or more but less than $20,000. The court assessed punishment at fifteen years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

At the hearing on Appellant's motion to suppress the evidence, the testimony revealed that on September 17, 2001, members of the El Paso Police Department Repeat Offenders Program (ROP) were assigned to conduct surveillance on Appellant. Officer Fernando Carrasco testified that on that day, he picked up the surveillance of Appellant at an apartment occupied by his cousin, Christina Cox. Upon leaving the apartment, Appellant, driving an older model Dodge van, headed east to a house on Cabot Street which was near a city park. He took a bucket out of his van and gave it and some tools to an individual identified as Domingo Rodriguez. Appellant then went to a nearby grocery store. Officer Carrasco testified that the surveillance of Appellant continued while he was visiting with the owner of the grocery store. While at the grocery store, Appellant was seen removing a television set from the back of his van and he gave it to the store owner. Appellant then got back into his van and left.

Officer Carrasco testified that he and his partner entered the store and met with the store owner about the delivered property. The owner gave consent to have the property checked by the officers. Examination of a television and a weed eater revealed that they had "City of El Paso" property tags. Knowing that there had been various burglaries of vehicles from a city lot located behind Appellant's cousin's house, Officer Carrasco suspected that Appellant may have been involved in these burglaries. Officer Carrasco recovered the property from the store owner and took the property to the Pebble Hills Command Center where the property was identified. Officer Carrasco further testified that a felony arrest warrant for theft was prepared naming Appellant as the individual who had taken the property from the vehicles in the city lot.

The investigation then shifted to Appellant's cousin Christina Cox's apartment on Bellrose Street where they had initially seen Appellant. They informed Cox that they had a warrant for Appellant and she allowed them to enter the residence. Appellant was at the apartment and he was informed of the warrant and he was advised of his rights. Cox was told why Appellant was being arrested; she gave

them permission to search the apartment. The police took a television and some other property to determine if it was stolen. It was later returned to Cox.

Officer Carrasco testified that Appellant gave the officers permission to search his van. The officers found some tools in the van. The van and its contents were impounded. After stopping at the Cabot Street address, Appellant was taken to the police station. Appellant was given something to drink and he was allowed to smoke cigarettes. Appellant was advised of his rights by reading the *Miranda* card to him. Appellant stated that he did not have his glasses, so Officer Carrasco read the warning to him and then had him initial the card and write the time down. Appellant related how he committed the offense, and Officer Carrasco typed the statement. The officer read the statement to Appellant as he stated he did not have his glasses.

The sequence of events during the day was that the surveillance started at about eight in the morning. After following Appellant about and obtaining the arrest warrant, Appellant was arrested at approximately 4 p.m. They started interviewing about 6:02 p.m. which was the time stated on the *Miranda* card. The written confession was started at 9:50 p.m., and it was finished at 10:48 p.m. Another officer, Officer Arias, came in and out of the interview room although he did not participate in the taking of the statement. Upon completion of the statement, it was printed and Officer Carrasco read it to Appellant. Appellant was advised he could make any changes he desired and Appellant signed the statement and he initialed every paragraph. Officer Arias witnessed Appellant sign the statement.

Officer Carrasco testified that Appellant did not invoke any of his rights and he never asked for a lawyer or requested the termination of the interview. He never asked to speak to members of his family. The officer stated that Appellant was not threatened or promised anything in order to obtain his confession. Officer Carrasco testified that the interview was not continuous but was broken up by casual conversation and food, drink, and cigarette breaks.

Christine Cox testified on behalf of Appellant at the hearing. She related when the officers came to her apartment, they entered without permission. They did not announce why they were there. She related that items in her apartment were taken without her permission, and those items were not returned for several weeks; albeit, after the incident, she knew the police wanted to talk to her, but she was unable to give them a statement due to her personal situation.

Appellant stated that he did not give the police officers permission to search his van, and that they searched the van prior to his arrival outside the apartment and without his permission. The officers threatened to take him to Domingo Rodriguez's house to show them all the items he had taken. When he refused to get out of the car at that house, one of the officers slammed his head against the backseat several times and threatened him with further abuse by another large, burly officer if he did not cooperate. Appellant testified that the officers threatened to search his aunt's property, and they would take any property they suspected was stolen.

Appellant related that he was handcuffed from the onset of his arrest. He stated that he was transported to the Pebble Hills police station. He was put in a cage and handcuffed to a bar for approximately two hours. Detective Carrasco said he was going to make it hard on Appellant's family. Appellant was then transported to the police station at Mon-

tana and Piedras Streets. He was handcuffed to a chair during the course of the interview.

Appellant testified that he was not advised of his rights until 10 o'clock in the evening after this arrest. He denied that he was given the *Miranda* warnings. Instead, Officer Carrasco just gave him a card and told him to initial it and put the time on it. Prior to taking him to the justice of the peace, Officer Carrasco told him to put the time on the card and sign the paperwork. Appellant asserted he had never read his confession until his lawyer showed him a copy of it. Further, Appellant testified that he asked for an attorney and he asked to speak to his family repeatedly throughout the interview and his requests were ignored. Appellant stated that he asked to speak to an attorney about three or four times. Further, he was told he was confessing to misdemeanor theft.

## II. *DISCUSSION*

■ In Issue No. One, Appellant contends that the court erred in denying his motion to suppress the confession because it was not given voluntarily. The standard of review regarding the voluntariness of a confession is a deferential review of the trial court's determination of the historical facts and a *de novo* review of the law's application to those facts. *Henderson v. State*, 962 S.W.2d 544, 564 (Tex.Crim.App. 1997). As the question of voluntariness in most cases, as in this one, will rely upon the factual determinations made by the trial judge after hearing and judging the credibility of the testifying witnesses, the standard of review applied will be one of abuse of discretion. *Franks v. State*, 90 S.W.3d 771, 784 (Tex.App.-Fort Worth 2002, no pet.). A court abuses its discretion when it acts without reference to any guiding rules or principles, or by acting

arbitrarily or unreasonably. *Galliford v. State*, 101 S.W.3d 600, 604 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). The trial court is the exclusive finder of fact in a motion to suppress hearing, and as such, it may choose to believe or disbelieve any or all of any witness's testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim. App.1990).

■ A statement is involuntary if the record reflects "official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim. App.1995). Voluntariness of a confession is decided by considering the totality of circumstances under which the statement was obtained. *Creager v. State*, 952 S.W.2d 852, 855 (Tex.Crim.App.1997); *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim.App.1995).

Appellant contends that under the totality of the circumstances, his confession was involuntary because he was in custody for nearly seven hours between his arrest and his signing of the confession. Appellant also asserts that he was handcuffed during this time and the officers intimidated him by indicating they would inform Domingo Rodriguez that Appellant had "snitched" on him. He was threatened with physical abuse by the burly police officer and he was physically assaulted. He was further threatened with retribution upon various family members. Due to the lack of his eyeglasses, Appellant could not read his confession and his request to speak to a lawyer was refused. He was told he was admitting to misdemeanor theft.

In its findings of fact and conclusions of law, the trial court found that Appellant's confession was voluntary in that he was properly warned, the interrogation period was not unreasonably long and breaks

were provided, and Appellant did not request an attorney or request to see members of his family. Further, he was not intimidated or coerced to make the confession.

Regarding the length of the interrogation, there is evidence in the record to support the court's finding that it was not unreasonably long. The length of the interrogation is one factor to be considered in determining whether a suspect's statement is coerced. *See Guardiola v. State*, 20 S.W.3d 216, 223–24 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (stating that length of detention is relevant to determination of coercion). Here, it is not contested that Appellant was in police custody for about seven hours while his confession was obtained. However, a lengthy interrogation does not automatically render a statement involuntary. *See Smith v. State*, 779 S.W.2d 417, 429 (Tex.Crim.App. 1989) (holding that eight hours of questioning without food did not render confession involuntary in light of defendant's willingness to continue). In this case, Appellant was given water, was allowed breaks, was offered food, and was offered cigarettes. After Officer Carrasco completed typing the statement, he read it to Appellant and Appellant was allowed to make any necessary corrections. It was within the province of the court to believe that Appellant's will was not overborne due to the length of his interrogation.

The evidence regarding Appellant's complaints that he was physically abused and that the officers failed to terminate the interview after he asked for an attorney was controverted by Officer Carrasco's testimony. We must therefore defer to the trial court's fact findings relating to these complaints. *See Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim. App.2000). The complaint regarding Appellant's inability to read the statement due to the lack of his glasses is contravened by Officer Carrasco's testimony that the confession and warning card were read to him. Also, the court was entitled to disbelieve the contention that Appellant was told he was admitting to misdemeanor theft even if that contention was not directly controverted. *See Masterson v. State*, 155 S.W.3d 167, 170 (Tex.Crim.App. 2005), *cert. denied*, —— U.S. ——, 126 S.Ct. 1330, 164 L.Ed.2d 47 (2006).

We find that the court did not abuse its discretion in denying Appellant's motion to suppress due to involuntariness. Issue No. One is overruled.

In Issue No. Two, Appellant asserts that the court erred in denying Appellant's motion to suppress his confession because it was taken in violation of his Fifth Amendment right to counsel. Appellant testified that he invoked his right to counsel during his written confession, but was denied access to counsel. This testimony was disputed by Officer Carrasco. Appellant's testimony is the only evidence that he invoked his right to counsel. In its findings of fact, the trial court found Appellant's testimony lacked credibility. As stated, because these are findings of fact, we must respect the trial court's factual conclusions in the absence of a showing of an abuse of discretion. *See Carmouche*, 10 S.W.3d at 327–28. Accordingly, Issue No. Two is overruled.

In Issue No. Three, Appellant argues that the court erred in denying his motion to suppress the evidence because the police searched his van without his consent. As stated, the surveillance officers determined that Appellant had off-loaded items from his van and that property belonged to the City of El Paso. Officer Carrasco testified that Appellant gave permission to search his van. The van and its contents were impounded.

On the other hand, Appellant testified that he was placed in the backseat of a police car at his cousin's house after his arrest. Officer Carrasco asked Appellant to sign a written consent form to search the van. Appellant refused to sign the form. He testified that the police officers had already started to search the van and some of the items from the van were on the pavement. In its findings of fact and conclusions of law, the court found that, "Officers searched defendant's van after they had observed defendant removing property from the van that they determined was stolen from the City of El Paso." The court made no finding regarding Appellant consenting to the search of the van.

 We take the court's finding of fact to indicate that the court found that the officers had probable cause to search the van based upon the illicit activity observed by the surveillance officers. Under both state and federal law, a police officer may conduct a warrantless search of an automobile, if he or she has probable cause to believe a crime has been committed and there is contraband located somewhere inside the vehicle. *Carroll v. United States*, 267 U.S. 132, 158–59, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925); *Hollis v. State*, 971 S.W.2d 653, 655 (Tex.App.-Dallas 1998, pet. ref'd). The automobile exception does not require the existence of exigent circumstances in addition to probable cause. The justifications for this exception are that vehicles are inherently mobile and the expectation of privacy with respect to an automobile is relatively low. *Hollis*, 971 S.W.2d at 655. In determining probable cause, courts must consider the totality of the circumstances. *Id.* Probable cause exists when the facts and circumstances within the officer's knowledge and about which he or she has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that a crime has been committed. *Id.* at 656. The sum of the information known to the cooperating officers at the time of a search is to be considered in determining whether there was sufficient probable cause. *Id.*

 In this case, the police officers had viewed Appellant dropping off stolen property from the inside of his van. An impounded vehicle may be searched without a warrant if there is probable cause; stolen property may be seized and impounded for the true owner. *Gandy v. State*, 835 S.W.2d 238, 243 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd). Because the subsequent search was therefore based on probable cause, the trial court did not abuse its discretion in admitting the evidence found. Issue No. Three is overruled.

In Issue No. Four, Appellant asserts that the court erred in refusing to instruct the jury to disregard his confession if the jury should find that it was involuntarily made. At trial, Appellant requested that the court instruct the jury in its charge that if Appellant was compelled to make his statement by Officer Carrasco, or if they had a reasonable doubt thereof, they should completely disregard the statement as evidence for any purpose. The court denied the request.

 Article 38.23(a) of the Texas Code of Criminal Procedure provides that no evidence obtained by an officer in violation of any law of the State of Texas shall be admitted into evidence against the accused in the trial of a criminal case. Tex.Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005); *Mendoza v. State*, 88 S.W.3d 236, 239 (Tex.Crim.App.2002). In any case in which the evidence raises an issue regarding whether evidence was obtained in violation of the laws of Texas, the jury shall be instructed that if it believes, or has a

reasonable doubt, that the evidence was obtained in violation thereof, then the jury shall disregard any such evidence. Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2005); *Mendoza,* 88 S.W.3d at 239.

The terms of article 38.23 are mandatory, and when an issue of fact is raised as to compulsion or persuasion in obtaining a confession, a defendant has a statutory right to have the jury charged accordingly. The only question is whether under the facts of a particular case, defendant raised the issue by the evidence, thus requiring the jury instruction. *Stone v. State,* 703 S.W.2d 652, 655 (Tex.Crim.App. 1986); *Jordan v. State,* 562 S.W.2d 472, 473 (Tex.Crim.App.1978); *Patterson v. State,* 847 S.W.2d 349, 352 (Tex.App.-El Paso 1993, pet. ref'd). There must be a factual dispute as to how the evidence was obtained. *Balentine v. State,* 71 S.W.3d 763, 773 (Tex.Crim.App.2002). Also, allegations of coercive police conduct raised at trial must be causally related to the confession in order to constitute a violation of due process. *Alvarado v. State,* 912 S.W.2d 199, 211 (Tex.Crim.App.1995).

Appellant points to the testimony of Officer Carrasco and Christine Cox at trial regarding the fact that the property taken from her apartment was not stolen. We fail to see how this evidence is causally connected to Appellant's confession. Furthermore, when an accused has created conditions which place an innocent relative under suspicion, and he desires to extricate the relative from this position by making a confession and the confession is self-motivated, it may be deemed voluntary and admissible in evidence. *See Roberts v. State,* 545 S.W.2d 157, 161 (Tex.Crim.App. 1977).

Next, Appellant utilizes the testimony at trial of Officer Carrasco that he began interrogating Appellant immediately upon his arrest and the interrogation lasted for four hours. At trial, the officer testified that he began talking to Appellant after his arrest at approximately 4 p.m. Appellant had been advised of his rights. At around 6 p.m., he started interviewing Appellant and he began typing the confession at 9:50 p.m. It was finished at 10:48 p.m. The interviewing was not continuous and various breaks in the interviewing occurred. This evidence in and of itself does not implicate the involuntariness of the confession or present a factual dispute. *See Licon v. State,* 99 S.W.3d 918, 925 (Tex.App.-El Paso 2003, no pet.) (interrogation of almost four hours was not excessively long).

Lastly, Appellant contends that Officer Carrasco's testimony that he placed Appellant under arrest before he requested consent to search the van, and his testimony that he did not get written consent to search the van necessitated giving the requested instruction. We fail to see the relevance or the causal connection to the confession. Accordingly, we overrule Issue No. Four.

Having overruled each of Appellant's issues on review, we affirm the judgment of the trial court.