PD-0446-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/1/2015 9:27:59 AM
Accepted 5/1/2015 11:50:34 AM
ABEL ACOSTA
CLERK

**PD-0446-15**

# IN THE COURT OF CRIMINAL APPEALS
## AT AUSTIN, TEXAS

| | | |
|---|---|---|
| **ASHLEY JACK-CODY HENDERSON,** | § | |
| **Appellant** | § | |
| | § | **CAUSE NO. 11-13-00060-CR** |
| **v.** | § | |
| | § | **TRIAL COURT NO. 6547** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| **Appellee** | § | |

**PETITION FOR DISCRETIONARY REVIEW
FROM THE ELEVENTH COURT OF APPEALS
AT EASTLAND, TEXAS**

**CHIEF JUSTICE JIM WRIGHT, PRESIDING**

**PETITION OF PETITIONER (APPELLANT)**

FILED IN
COURT OF CRIMINAL APPEALS

May 1, 2015

ABEL ACOSTA, CLERK

**COPELAND LAW FIRM PO Box 399
Cedar Park, Texas 78613 Tel.
512-897-8196
Fax. 512-215-8144
Email: tcopeland14@yahoo.com**

**TIM COPELAND
State Bar No. 04801500
Attorney for Appellant**

# TABLE OF CONTENTS

Page

Table of Contents ................................................... *i,ii*

Index of Authorities ................................................ *iii,iv*

Identity of Trial Court and Parties ................................. 1

Statement Regarding Oral Argument ................................... 2

Statement of the Case ............................................... 3

Statement of the Procedural History of the Case ..................... 4

Grounds for Review .................................................. 4

**Ground for Review Number One**
The state offered two items (pills and gloves) into evidence over Henderson's objection that their evidentiary chain of custody was insufficient. Later, Henderson sought to "un-admit" the two offending items on the additional basis of a lack of probable cause justifying the search where the two items were seized. Was the Court of Appeals correct in holding that Henderson's subsequent objection to those two items on the basis of a lack of probable cause was untimely where the record indicates that the state consented to a re-litigation of the issue by presenting additional testimony and argument upon renewal of Henderson's objection?

**Ground for Review Number Two**
The Court of Appeals erred when it sustained the trial court's finding that there was probable cause to search Henderson's car without a warrant.

**Summary of the Argument** ......................................... **5**

# TABLE OF CONTENTS, continued

**Page**

**Background**                                                            **6**

**Ground of Review Number One**                                      **8**

**Ground of Review Number Two**                                      **8**

**Statement of Pertinent Evidence**                                 **8**

**Court of Appeals' Decision**                                      **10**

**Argument**                                                          **12**

**Prayer**                                                            **16**

**Certificate of Service and of Compliance with Rule 9**                   **16**

# INDEX OF AUTHORITIES

**Authorities**                                                    **Page**

## Texas Court of Criminal Appeals' cases

***Carmouche v. State***                                             **12**
    10 S.W.3d 323 (Tex. Crim. App. 2000)

***Gonzales v. State***                                              **13**
    195 S.W.3d 114 (Tex. Crim. App. 2006)

***Guzman v. State***                                               **12**
    955 S.W.2d 85 (Tex. Crim. App. 1997)

***Rachal v. State***                                            **4,13,**
    917 S.W.2d 799 (Tex. Crim. App. 1996)            **14**

***Romero v. State***                                                **13**
    800 S.W.2d 539 (Tex. Crim. App. 1990)

***State v. Ross***                                                  **13**
    32 S.W.3d 853 (Tex. Crim. App. 2000)

***Wilson v. State***                                                **11**
    71 S.W.3d 346 (Tex. Crim. App. 2002)

## Court of Appeals' cases

***Burke v. State***                                                 **12**
    27 S.W.3d 651 (Tex. App. – Waco 2000, *pet. ref'd*)

# INDEX OF AUTHORITIES, continued

**Authorities** **Page**

### Statutes

**TEX. HEALTY & SAFETY CODE §481.115 (West Supp. 2012)** **3**

**TEX. PENAL CODE 12.42(b) (West Supp. 2012)** **3**

**TEX. R. EVID. 103(a)(1)** **11**

### Constitution

**Fourth Amendment, United States Constitution** **15**

## IDENTITY OF TRIAL COURT AND PARTIES TO

## THE HONORABLE COURT OF APPEALS:

**NOW COMES** Ashley Jack-Cody Henderson, appellant, who would show the Court that the trial court and interested parties herein are as follows:

**HON. SHANE HADAWAY**, Judge Presiding, 39th Judicial District Court, Haskell County, P.O. Box 966, Haskell, Texas 79521.

**ASHLEY JACK-CODY HENDERSON**, appellant, TDCJ Number 183002, Robertson Unit, 12071 FM 3522, Abilene, Texas 79601.

**EDWARD KEIN**, trial attorney for appellant, 1622 Belt Line Rd., Ste. 201, Carrollton, Texas 75006.

**TIM COPELAND**, appellate attorney for appellant, P.O. Box 399, Cedar Park, Texas 78613.

**MICHAEL FOUTS**, Haskell County District Attorney, trial and appellate attorney for appellee, the State of Texas, P.O. Box 193, Haskell, Texas 79521.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant believes the clarity of the issue in this case is such that oral argument would add nothing.

**PD-0446-15**

**IN THE COURT OF CRIMINAL APPEALS
AT AUSTIN, TEXAS**

| | | |
|---|---|---|
| **ASHLEY JACK-CODY HENDERSON,** | § | |
| Appellant | § | |
| | § | **CAUSE NO. 11-13-00060-CR** |
| **v.** | § | |
| | § | **TRIAL COURT NO. 6547** |
| **THE STATE OF TEXAS,** | § | |
| Appellee | § | |

**PETITION FOR DISCRETIONARY REVIEW
FROM THE ELEVENTH COURT OF APPEALS
AT EASTLAND, TEXAS**

**TO THE HONORABLE COURT OF CRIMINAL APPEALS OF TEXAS:**

**STATEMENT OF THE CASE**

A jury convicted Ashley Cody-Jack Henderson of possession of a controlled substance, oxycodone, in an amount of 4 grams or more but less than 200 grams. (*See* C.R. 1, p. 37 and **TEX. HEALTY & SAFETY CODE §481.115 (West Supp. 2012)**. The second-degree felony offense was enhanced by a prior felony conviction, and the trial court assessed Henderson's punishment at confinement for 60 years. (*See* C.R. 1, pp. 73-74 and **TEX. PENAL CODE 12.42(b) (West Supp. 2012)**).

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

The Eleventh Court of Appeals at Eastland, Texas, by Memorandum Opinion dated March 26, 2015, affirmed Henderson's conviction and sentence. A copy of that opinion is hereto attached as if fully incorporated herein at length.

## GROUNDS FOR REVIEW

## GROUND FOR REVIEW NUMBER ONE

The state offered two items (pills and gloves) into evidence over Henderson's objection that their evidentiary chain of custody was insufficient. Later, Henderson sought to "un-admit" the two offending items on the additional basis of a lack of probable cause justifying the search where the two items were seized. Was the Court of Appeals correct in holding that Henderson's subsequent objection to those two items on the basis of a lack of probable cause was untimely, where the record indicates that the state consented to a re-litigation of the issue by presenting additional testimony and argument upon renewal of Henderson's objection? (*See* R.R. 4, 150-152 and ***Rachal v. State***, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996)).

## GROUND FOR REVIEW NUMBER TWO

The Court of Appeals erred when it sustained the trial court's finding that there was probable cause to search Henderson's car without a warrant.

## SUMMARY OF THE ARGUMENT

The Court of Appeals' review of the trial court's denial of Henderson's objection to introduction of evidence seized in the search of a vehicle was flawed in two respects. In the first place, the appellate court erred when it held that Henderson's objection to the introduction of certain items of evidence had been waived in the trial court. Henderson and the state "re-litigated" his objection when he raised different grounds with regard to the submission of those items, and thus Henderson's issue on appeal concerning his objection to that evidence *did* comport with a reviewable issue. The Court of Appeals also erred when it held that the totality of the circumstances allowed for a conclusion that there was a fair probability that contraband or evidence would be found in an automobile with which Henderson had been connected. The rationale used by the Court of Appeals in reaching that conclusion failed to account for such facts as: Henderson was not arrested near his car; distinctive clothing found in the motel room supported a belief that Henderson had participated in a burglary, but not necessarily that fruits of that burglary would still be in the car; there was no incriminating evidence in plain view in the car; there was no reason to suspect that the car would contain the type of contraband the subject of the offense, and, finally and most importantly,

four days after the burglary, there was reason to suspect that evidence from that burglary would still be in the car.

## BACKGROUND

Dallas police officers suspected Henderson was responsible for burglaries in the Dallas area and obtained a warrant to attach a mobile tracking device to a car they had seen him drive. (R.R. 3, pp. 122-135, 163). On November 4, 2011, the tracking device showed the car, an Acura, had been driven to a location in Haskell. The Dallas police notified Haskell authorities of the car's presence and of their concerns and learned that a burglary of a drug store known as "The Drug Store" had occurred in Haskell on that date. (R.R. 4, 112-113, 121-126). The tracking device also showed that the car had stopped on its way back to Dallas from Haskell at a location on Marrs Road outside of Haskell as well as a convenience store in Throckmorton. (R.R. 3, pp. 77, p. 3). Officers from Haskell found evidence of items taken from the store at the Marrs Road location, and they recovered video from the convenience store's surveillance system. (R.R. 3, pp. 77, 83). After receipt of photo ID's of Henderson from the Dallas Police Department, Haskell County authorities compared the photos with the store's surveillance video and issued arrest warrants for Henderson and an associate. (R.R. 3, pp. 85-89).

On November 8, four days after the burglary, Haskell County law enforcement officers traveled to Dallas. Working with the Dallas Police Department, they tracked the Acura to a motel in Dallas. There, Dallas police officers confirmed the room Henderson was in and executed the Haskell County arrest warrant. (R.R. 3, pp. 204-206). When officers forced Henderson's motel room door, they found Henderson in the room with his girlfriend, and both were arrested. The officers also recovered a cell phone, a cold weather mask, a baseball cap, and tennis shoes from the room – the latter three items like those seen in the video from The Drug Store's surveillance DVD's. (R.R. 3, pp. 106-109). The officers then proceeded to the car with the tracking device parked in the motel's parking lot. Officers searched the Acura and found pills of the same manufacture as those taken in the drugstore burglary hidden inside a "boom-box" in the car, as well as gloves and tools a witness described as the type used in break-ins. (R.R. 4, p. 63 and *see* State's Exhibits Nos. 4, 2 and 33, respectively).

Shawn Barber, a 6-time prior felon, testified that he and Henderson's girlfriend, Jenny, accompanied Henderson on November 4, 2011, to Haskell where he and Henderson burgled a pharmacy while Jenny waited in the car. (R.R. 4, pp. 195, 200). After the burglary, Barber testified that he and Henderson discarded the pharmacy's trashcan and other drug store paraphernalia, including papers with the pharmacy's logo, on a dirt road leading out of town after they sorted out the

valuable meds taken in the burglary. (R.R. 4, pp. 194-196; 200-2008). Barber confirmed his and Henderson's identities from various video stills taken from the pharmacy's surveillance videos. (R.R. 4, pp. 209-211). He also described the trio's stops on a road outside Haskell and at an Allsup's convenience store in Throckmorton before the trio returned to the Metroplex. (R.R. 4, p. 202).

## GROUND FOR REVIEW NUMBER ONE

The state offered two items (pills and gloves) into evidence over Henderson's objection that their evidentiary chain of custody was insufficient. Later, Henderson sought to "un-admit" the two offending items on the additional basis of a lack of probable cause justifying the search where the two items were seized. Was the Court of Appeals correct in holding that Henderson's subsequent objection to those two items on the basis of a lack of probable cause was untimely, where the record indicates that the state consented to a re-litigation of the issue by presenting additional testimony and argument upon renewal of Henderson's objection? (*See* R.R. 4, 150-152 and ***Rachal v. State***, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996)).

## GROUND FOR REVIEW NUMBER TWO

The Court of Appeals erred when it sustained the trial court's finding that there was probable cause to search Henderson's car without a warrant.

## STATEMENT OF PERTINENT EVIDENCE

As both grounds for review involve the legality of a search of Henderson's car, evidence pertinent to both issues is here presented.

Henderson was accused of burglarizing "The Drug Store" in Haskell, Texas, on November 4, 2011. After his car was tracked to a motel in Dallas, Haskell law enforcement officers joined Dallas police officers on November 8, 2011, in arresting Henderson in his motel room. After his arrest, officers searched his vehicle in the parking lot where pills, tools described as burglary tools, and a pair of gloves were found. Henderson objected to the introduction of the pills and gloves on the basis that the state had failed to establish a proper chain of custody. (R.R. 3, pp. 103-104).[1] His objection was overruled, but after the owner of the pharmacy testified that the pills found in Henderson's car could not be specifically identified as those taken from The Drug Store, Henderson moved the trial court to "un-admit" evidence concerning the pills (State's Exhibit No. 4) as irrelevant to the offense charged, as well as the evidence of State's Exhibits Nos. 2 and 33 (mechanic's gloves and tools also recovered from the car). (*See*, Lonnie Meredith's testimony at R.R. 4, pp. 337-144 and Henderson's trial motion at R.R. 4, pp. 70-72, 150-152). Henderson asserted that there had been no consent to search the car and that the automobile exception to a warrantless search did not

---

[1] He objected to introduction of the tools on the basis that police lacked probable cause to search the car. (R.R. 4, p.72).

apply. Thus, he argued, all of the evidence cited was "fruit of the poisonous tree." (R.R. 4, p. 151). The prosecution agreed that the only basis for a search lay in a finding that the officers did, in fact, have probable cause when they searched Henderson's car, but the state also noted that Henderson had made no contemporaneous objection to the admission of the evidence during trial. (R.R. 4, pp. 151-152). Nevertheless, the state presented additional evidence on the matter and re-urged the admission of the evidence covered by Henderson's objection. (R.R. 4, p. 152). After hearing testimony from the state's witnesses and argument of counsel on the issue again, the trial court denied Henderson's motion to "un-admit" State's Exhibits Nos. 2, 4 and 33. (R.R. 4, p. 185).

## COURT OF APPEALS' DECISION

In his first issue on appeal, Henderson argued that "[t]he denial of [his] objection to the introduction of evidence obtained from [the] search of his car was error because there was no probable cause to believe the vehicle contained evidence of criminal activity." Specifically, he complained of the admission of State's Exhibit No. 2 (mechanic's gloves), State's Exhibit No. 4 (a pill bottle), and State's Exhibit No. 33 (burglary tools). Dallas police obtained all of those items when they searched the black Acura in Dallas. When the State offered the gloves and the pill bottle into evidence, Henderson first objected that the State had not established a proper chain of custody. The trial court overruled that objection and

admitted the two exhibits. Later, however, Henderson asked the trial court to "un-admit" the first two exhibits. The basis for his request to "un-admit" the two exhibits was that there had been no showing of probable cause to search the Acura (Henderson's second issue on appeal and the same objection he had first levied against introduction of the *tools* recovered from the car).

The appellate court held that Henderson's second objection seeking to "un-admit" the pills and gloves was not timely in the trial court, and that an argument based on a lack of probable cause with regard to those two items could not be made for the first time on appeal. (*Slip op*. at 6). The legal basis for the complaint raised on appeal did not comport with the complaint raised in the trial court. *Citing Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) and **TEX. R. EVID. 103(a)(1)**. Thus, the Court ruled, Henderson's issue leveled at the admission of the gloves and pill bottle on the basis of a lack of probable cause was waived.

With regard to Henderson's complaint on the admission of the burglary tools found in the Acura, the Court of Appeals ruled that under the totality of circumstances there was a fair probability at the time of the search that evidence would be found in the car, and thus probable cause to search existed. (*Slip op*. at 6). To support that conclusion, the Court noted that the car was mobile, Dallas officers had been tracking it in connection with burglaries in Dallas, the car had been at The Drug Store when it was burglarized, and police had DVD recordings

of the burglary. (*Slip op.* at 7). Moreover, when officers had entered Henderson's motel room they found a hat, shoes and mask like those shown on the drugstore's DVD, and the car had stopped at a convenience store in Throckmorton where security cameras caught Henderson's image on November 4. Thus, the Court reasoned, the totality of circumstances allowed for a conclusion that there was a fair probability that contraband or evidence would be found in an automobile with which Henderson had been connected so probable cause existed to search that car. (*Slip op*. at 7).

## ARGUMENT

As both grounds for review involve the search of a car with which Henderson was connected, both grounds are here argued under one heading.

*Standard of Review*

A trial court's decision on a motion to suppress evidence is reviewed under a bifurcated standard of review, deferring to the trial court's determination of historical facts that depend on credibility, but reviewing de novo the trial court's application of the law. **Burke v. State**, 27 S.W.3d 651, 654 (Tex. App. – Waco 2000, *pet. ref'd*). The appellate court affords almost total deference to a trial court's determination of the historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. **Carmouche v. State**, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000);

***Guzman v. State***, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). A court also affords such deference to a trial court's ruling on application-of-law-to-fact questions, also known as mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor. ***Guzman***, 955 S.W.2d at 89. The appellate court, though, reviews de novo those questions not turning on credibility and demeanor. ***Id***.

Here, the record contains no findings of fact. When there is no request for the trial court to enter findings of fact, an appellate court assumes that the trial court made implicit findings that support as ruling, so long as those implied findings are supported by the record. ***State v. Ross***, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." ***Gonzales v. State***, 195 S.W.3d 114, 126 (Tex. Crim. App. 2006); *see* ***Romero v. State***, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

*Analysis*

In its review, an appellate court generally considers only the evidence adduced at the suppression hearing since the ruling under review was based on the suppression hearing evidence rather than the full body of evidence introduced at trial. ***Rachal v. State***, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). However, when the legality of the seizure is *re-litigated* at trial, consideration of relevant trial

testimony is appropriate in a review. *Id*. As noted in ***Rachal***, an issue is re-litigated when one of the parties (in that case, the state) reintroduces suppression issues and the other party (in ***Rachal***, the defense) participates in the *re-litigation* of the issue. ***Id.***[2] Here, in effect, the state participated willingly in the re-litigation of an issue previously decided by the trial court, and the Court of Appeals, according to ***Rachal***, was obligated to consider the additional evidence. Thus, the Court of Appeals erred when it concluded that Henderson's second re-litigated objection had been waived.

With regard to the broader issue of probable cause to search the car, the Court of Appeals correctly notes that the car had been tracked to and from areas in Haskell County where the burglary had occurred, four days earlier. (*Slip op.* at 7). However, apart from the fact that the car had been so tracked, the state offered no evidence that the police had probable cause to believe Henderson's car contained contraband *at the time of the warrantless search* of the car four days after the burglary. In other words, the Court of Appeals did not address the staleness issue in its opinion. Additionally, there was no testimony that Henderson was known as a drug dealer or even a user, or that he was known to keep illegal narcotics on his person or in his automobile. That he might have driven the car to and from a

---

[2] The state did object initially to Henderson's motion to "un-admit" the evidence, but it also put on additional testimony and re-argued its position, and the trial court only ruled on Henderson's new objection *after* hearing the testimony and argument of counsel.

burglary does not suggest that he was known or suspected of keeping burgled items in the car for any particular length of time. After all, the mode of transportation used by a criminal defendant should not, in itself, necessarily give rise to probable cause in any particular circumstance. Otherwise, any vehicle could be searched at any time anywhere merely because a car is most often the chosen means of transportation employed by criminal suspects. Here, the tracked car was tangentially important only because of the tracking device attached to it which allowed the police to track and eventually locate a criminal suspect. The *car's* importance to the offense of Henderson's alleged possession was only important contextually in tying him to a burglary. Its existence in a parking lot, in and of itself, did not suggest there was a "fair probability" of finding inculpatory evidence in the car. Finally, while clothing discovered in the motel room provided support that Henderson had been involved in a burglary, their discovery did not support a belief that contraband taken in the burglary would necessarily still be in the car 4 days after the burglary. Thus, under the totality of circumstances, the best that can be said with regard to the car and its relevance in support of the trial court's probable cause finding, is that criminals drive cars like everyone else. That hardly rises to a finding that under a totality of circumstances there was probable cause to believe evidence would be found in the car.

For those reasons the trial court erred when it denied Henderson's objection to the introduction of evidence seized in contravention of the **Fourth Amendment**. The Court of Appeals compounded that error when it held that under the circumstances the trial court did not abuse its discretion in allowing the introduction of the offending evidence when the record did not support a probable cause finding by that court.

**PRAYER**

**WHEREFORE**, Henderson prays that this Court reverse the judgment of the appellate court and remand for new trial in accord with its findings herein.

**COPELAND LAW FIRM**
P.O. Box 399
Cedar Park, TX 78613
Mobil/Text: 512.897.8196
Fax: 512.215.8114
Email: tcopeland14@yahoo.com

By: /s/ Tim Copeland
      Tim Copeland
      State Bar No. 04801500
      Attorney for Appellant

**CERTIFICATE OF SERVICE AND OF
COMPLIANCE WITH RULE 9**

This is to certify that on April 29, 2015, a true and correct copy of the above and foregoing document was served on the State Prosecuting Attorney, P.O. Box 12405, Capitol Station, Austin, Texas 78711, and on Mike Fouts, District Attorney of Haskell County, P.O. Box 193, Haskell, Texas 76550, in accordance with the *Texas Rules of Appellate Procedure*, and that this Petition for Discretionary

Review is in compliance with *Rule 9* of the *Texas Rules of Appellate Procedure* and that portion which must be included under *Rule 9.4(i)(1)* contains 3422 words.

/s/ Tim Copeland
Tim Copeland



11TH COURT OF APPEALS
EASTLAND, TEXAS
JUDGMENT

Ashley Jack Cody Henderson,

* From the 39th District
Court of Haskell County,
Trial Court No. 6547.

Vs. No. 11-13-00060-CR

* March 26, 2015

The State of Texas,

* Memorandum Opinion by Wright, C.J.
(Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.)

This court has inspected the record in this cause and concludes that there is no error in the judgment below. Therefore, in accordance with this court's opinion, the judgment of the trial court is in all things affirmed.



In The

# Eleventh Court of Appeals

No. 11-13-00060-CR

**ASHLEY JACK CODY HENDERSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 39th District Court**
**Haskell County, Texas**
**Trial Court Cause No. 6547**

**M E M O R A N D U M   O P I N I O N**

The jury convicted Ashley Jack Cody Henderson of the offense   of possession of a controlled substance, oxycodone, in an amount of four grams or more but less than 200 grams. The second-degree felony offense was enhanced  by a prior felony conviction, and the trial court assessed Appellant's punishment  at confinement for sixty years.   On appeal, Appellant first claims that the trial    court

erred when it overruled his objections to the introduction of evidence seized in the search of a vehicle. In his second issue on appeal, Appellant claims that, because the State failed to link him to the drugs, the evidence is insufficient to show that he knowingly and intentionally possessed oxycodone. We affirm.

Undercover Dallas police officers suspected Appellant was responsible for burglaries in the Dallas area. On October 19, 2011, they obtained a warrant to attach a mobile tracking device to a black Acura that they had seen Appellant drive. Appellant was named as the owner/possessor of the Acura. After the officers placed the tracking device on the Acura, they began to monitor its location. In the early morning hours of November 4, 2011, the tracking device showed that the Acura had been driven to a location in Haskell. Later that evening, Dallas officers telephoned Haskell authorities and determined that a burglary had occurred at that location early that morning; a drugstore known as "The Drug Store" had been burglarized.

The Drug Store is equipped with an "audio box" that allows the Haskell County dispatcher to hear voices in the store. The audio box is activated when employees leave the store. The store is also equipped with an alarm. The alarm beeps at first until someone enters the alarm code, and if no one enters the code, the alarm sounds.

Christina Stevens was working as a dispatcher for the Haskell County Sheriff's Department in the early morning hours of November 4. The audio box in the drugstore had been activated, and from it, she heard the beeping of the alarm and then the alarm sound. She also heard a voice ask something like, "Did you get it all?" She heard another voice answer, "Yes." She dispatched an officer to The Drug Store.

Officer Daniel Kaszuba was dispatched to The Drug Store. He arrived around 5:45 or 6:00 a.m. Officer Kaszuba noticed that the lock had been removed

from the front door and was lying in the parking lot. Officer Kaszuba called for assistance and then secured the building.

Jeffrey Caparoon was a sergeant with the Haskell Police Department at the time of the burglary. He was one of the officers who responded to assist at The Drug Store that morning. He obtained and viewed DVDs from the continuously recording eight video cameras that were located in various places inside the store.

Lonnie Meredith, the owner of The Drug Store, was notified of the burglary around 6:00 a.m. on November 4. When Meredith arrived at the store, he noticed that a trash can was missing. He also noticed that a cabinet where controlled substances, such as Oxycontin, were kept had been opened and that most of the contents had been removed. The Drug Store kept an inventory, and from that inventory, Meredith always knew the amount of inventory "to the tablet." Among the missing inventory were 537 15-milligram tablets of oxycodone (a generic form of Oxycontin) and 300 60-milligram tablets of Oxycontin.

When the Dallas officers telephoned Haskell authorities on the evening of November 4, they also told them that, after the Acura had stopped at The Drug Store, it stopped for twenty-two minutes on Marrs Road about eight miles outside Haskell and for eight minutes at an Allsup's convenience store in Throckmorton.

The record reflects that Haskell law enforcement officers went to the Marrs Road location to which the Dallas police had directed them. There, the officers found a white trash can like the one taken in the burglary, and they also found papers related to The Drug Store. Because the tracking device showed a stop at Allsup's in Throckmorton, they also obtained surveillance videos from the Allsup's store.

By this time, Haskell officers had been told that Appellant was the person in the vehicle that the Dallas officers had been tracking. Officers had also received a photo ID from Appellant's drivers license.

Winston Stephens, Chief Deputy with the Haskell County Sheriff's Department, testified that the DVDs from The Drug Store showed that one of the men in the video wore a distinctive cap, tennis shoes, and "hoodlum mask."

Haskell County law enforcement officers obtained arrest warrants for Appellant and a man named Wheelis. Although arrested, Wheelis was later eliminated as a suspect.

Law enforcement officers from Haskell County requested that Dallas officers assist them in locating Appellant. After Dallas police located Appellant, Sergeant Caparoon and Deputy Stephens traveled to Dallas to execute the warrant.

Dallas police officers found the black Acura at an extended stay motel; they were the ones who executed the warrant. Upon entry into Appellant's motel room, Deputy Stephens noticed, among other things, a hat, shoes, and mask like those depicted in the video from The Drug Store surveillance DVDs. These items were later admitted into evidence at Appellant's trial.

The black Acura was parked in the parking lot at the motel. Officers searched the Acura and found pills, tools, and a pair of gloves. These items were also admitted into evidence.

Prior to Appellant's trial, Shawn Barber pleaded guilty to burglary of The Drug Store and to possession of oxycodone taken from there. He received a twelve-year plea bargain in exchange for his testimony against Appellant. At Appellant's trial, Barber testified that he participated in the burglary of The Drug Store on November 4, 2011, along with Appellant; they came from Dallas. In his testimony, Barber basically confirmed the physical evidence, the video evidence, and the mobile tracking device evidence. Barber admitted that he and Appellant possessed the drugs that they took from The Drug Store at least from the time they took them until they returned to Dallas.

We will first address Appellant's second issue in which he challenges the sufficiency of the evidence to link him to the drugs found in the Acura. He argues that the absence of any affirmative evidence that linked him to the drugs in the Acura "mitigates against a finding that he possessed the contraband [made] the basis of his charged offense. Appellant then concludes that, although a rational jury could have determined that he burglarized The Drug Store, "it did not necessarily follow that he exercised care, custody, control or management of narcotics found in his automobile four days later or that he knew the very same narcotics were in that automobile when it was searched." "Accordingly," Appellant concludes, "the evidence was insufficient to support [Appellant's] conviction for possession of a controlled substance."

To convict Appellant of unlawful possession of a controlled substance, the State was required to prove that Appellant exercised control, management, or care over the substance and that Appellant knew the thing possessed was contraband. *See Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The "affirmative links" rule is related to proof of control, management, care, and knowledge in connection with the contraband that an accused is charged with possessing. The rule protects an "innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Id.* at 406.

In its brief, the State correctly notes that Appellant was not charged with possession of the drugs found in the Acura. Appellant was charged in Haskell County for possession of drugs as shown in the video taken during the burglary and confirmed by Meredith's testimony, the information recorded by the mobile tracking device, the evidence found in Appellant's motel room when the Dallas officers arrested him, and Barber's testimony. There has been no challenge to the sufficiency of that evidence other than the argument that the failure to link Appellant to the drugs found in the Acura "mitigates against a finding that he

possessed the contraband [made] the basis of his charged offense." We overrule Appellant's second issue on appeal.

In his first issue on appeal, Appellant argues that "[t]he denial of [his] objection to the introduction of evidence obtained from [the] search of his car was error because there was no probable cause to believe the vehicle contained evidence of criminal activity." Specifically, Appellant complains of the admission of State's Exhibit No. 2 (mechanic's gloves), State's Exhibit No. 4 (a pill bottle), and State's Exhibit No. 33 (burglary tools). Dallas police obtained all of those items when they searched the black Acura in Dallas.

When the State offered the gloves and the pill bottle into evidence, Appellant objected that the State had not established a proper chain of custody. The trial court overruled the objection and admitted the two exhibits. Later, Appellant asked the trial court to "unadmit" the two exhibits. The basis for his request to "unadmit" the two exhibits was that there had been no showing of probable cause to search the Acura; that is also an argument that he makes on appeal. However, as the State argues, this objection was not timely in the trial court, and it cannot be made for the first time on appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A); *see also* TEX. R. EVID. 103(a)(1); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Further, the legal basis of a complaint raised on appeal must comport with the complaint raised in the trial court. *Wilson*, 71 S.W.3d at 349. Appellant's probable cause complaint leveled at the admission of the gloves and pill bottle is overruled.

In the trial court, Appellant did object, on probable cause grounds, to the admission of the burglary tools found in the Acura. When the totality of the circumstances allows for a conclusion that there is a fair probability that contraband or evidence will be found at a particular location, then probable cause to search exists. *Illinois v. Gates*, 462 U.S. 213 (1983); *Dixon v. State*, 206 S.W.3d

613, 616 (Tex. Crim. App. 2006). There was no search warrant in this case. Searches conducted without a warrant are per se unreasonable absent a few specific well-delineated exceptions. One of those exceptions is the "automobile exception." *Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008); *Barnes v. State*, 424 S.W.3d 218, 224 (Tex. App.—Amarillo 2014, no pet.). Under the automobile exception, officers "may conduct a warrantless search of a vehicle if it is readily mobile and there is probable cause to believe that it contains contraband." *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009). The court in *Neal* wrote that police "may lawfully search an automobile if they have probable cause to believe that the vehicle contains evidence of a crime. Probable cause to search exists when there is a 'fair probability' of finding inculpatory evidence at the location being searched." *Neal*, 256 S.W.3d at 282 (footnote omitted).

There is no question but that the Acura was readily mobile; Dallas officers had been tracking it for some time in connection with burglaries in Dallas. Further, officers knew that the Acura was at The Drug Store around the time that the store was burglarized, and they had the DVD recordings of the burglary. They also knew that, after the burglary, the Acura had been driven to the location on Marrs Road where officers found items connected to The Drug Store. Additionally, when officers entered Appellant's motel room, they noticed a hat, shoes, and a mask that resembled the hat, shoes, and mask worn during the burglary of The Drug Store as depicted in the surveillance DVDs from The Drug Store. Dallas officers also knew that, not long after the burglary, the Acura stopped at an Allsup's convenience store in Throckmorton, the town through which the officers had tracked the Acura as it was being driven to and from Haskell on November 4. When a court determines whether probable cause to search exists, it considers the totality of the circumstances. *Fineron v. State*, 201

S.W.3d 361, 367 (Tex. App.—El Paso 2006, no pet.). The combined information known to all the officers at the time of the search is to be considered in a probable cause determination. *Id.*

We hold that the totality of the circumstances that we have outlined above allows for a conclusion that there was a fair probability that contraband or evidence would be found in the Acura. For all of those reasons, we believe that the officers had probable cause to search the Acura without a warrant. We overrule Appellant's first issue on appeal.

We affirm the judgment of the trial court.

JIM R. WRIGHT

CHIEF JUSTICE

March 26, 2015

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.