

# NUMBER 13-17-00033-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**AARON MULUGETA MICAEL,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

**On appeal from the 22nd District Court
of Hays County, Texas.**

---

# MEMORANDUM OPINION
**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Benavides**

By two issues, appellant Aaron Mulugeta Micael challenges his conviction for possession of marijuana in an amount of less than five pounds but more than four ounces, a state jail felony. *See* TEX. HEALTH & SAFETY CODE ANN. 481.121 (West, Westlaw through 2017 1st C.S.). Micael alleges that: (1) his federal and state constitutional rights were violated by the search of a sealed container without a warrant or consent, and

(2) he was egregiously harmed by the lack of a jury instruction regarding an extraneous offense.   We affirm.

## I.   BACKGROUND[1]

During trial, the following evidence was presented:   on February 18, 2016, members of the Hays County Narcotics Task Force conducted surveillance in San Marcos, looking for Micael.   Members of the task force had received information that Micael was known to distribute drugs in the area, and they were looking for any traffic violations to detain him.

Detective Jayson Cormier, a San Marcos Police Department detective and member of the narcotics task force, observed Micael's Dodge Charger commit two traffic infractions:   failure to come to a complete stop at a red light and failure to signal a right-hand turn.   *See* TEX. TRANSP. CODE ANN. §§ 544.004, 545.104 (West, Westlaw through 2017 1st C.S.).   Detective Cormier used his cell phone to take video of Micael's traffic infractions and then requested a San Marcos Police Department patrol officer conduct a traffic stop.   Detective Cormier explained during trial that members of the narcotics task force drive unmarked undercover vehicles and dress in plain clothes, so they request uniformed officers to conduct traffic stops when necessary.

Officer Brian Beach of the San Marcos Police Department was on patrol in the area, witnessed Micael's traffic violations, and proceeded to pull over the vehicle Micael was driving.   Officer Beach testified that when he approached Micael's vehicle to ask for

---

[1]   Pursuant to a docket-equalization order issued by the Supreme Court of Texas, this case was transferred to this Court from the Third Court of Appeals in Austin.   *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2017 1st C.S.).

his driver license and insurance information, he smelled the odor of fresh marijuana from inside the vehicle. After speaking to Micael while waiting on dispatch to clear Micael's driver's license and insurance, Officer Beach asked Micael about the odor of marijuana and explained that he could conduct a probable cause search of the vehicle. While explaining that Micael was not under arrest but being detained for officer safety, Officer Beach had Micael step out of the vehicle and placed him in handcuffs.[2] Officer Beach stated he looked for weapons concealed in the driver's area of the vehicle and then proceeded to the backseat area behind the driver due to the number of items located there. Officer Beach removed a large cardboard box, which was taped closed, from the backseat and placed it on the ground outside the vehicle. He noticed that while the box had Micael's name spelled phonetically correct, the box was addressed to "Erin Micael." Upon completing the search of the backseat area, Officer Beach placed the box in the backseat area of the vehicle and cut open the tape. Officer Beach testified that due to the vehicle exception to the warrant requirement, he could open the box. He also explained that the odor of marijuana became stronger when the box was opened and that he saw manila envelope packaging inside the box.

Prior to testimony beginning on the second day of trial, Micael filed a motion to suppress. In an exchange with the trial court, Micael argued the search was illegal and there was no probable cause to detain Micael. Micael requested that the trial court carry the motion to suppress with the trial. He believed the evidence would show that Officer

---

[2] On the video introduced as State's Exhibit 9, Officer Beach told Micael that if nothing was found during the search of the vehicle, then he would be free to go, as Officer Beach had no intention of issuing a traffic citation to Micael.

Beach was not being truthful about smelling marijuana outside Micael's vehicle, and therefore, all the evidence found after the box was opened would be illegal.

Officer Beach continued his testimony on the second day of trial. He explained that he initially took the box out of Micael's vehicle to look for weapons in plain sight. Officer Beach explained that inside of the box were manila envelopes, which had been opened previously, that contained vacuum-sealed plastic packages that appeared to contain marijuana. Officer Beach stated he could still smell the marijuana through the vacuum-sealed plastic. Once the marijuana was discovered, Micael's detention became an arrest. Officer Beach read Micael his *Miranda* warnings, and Micael told him it appeared the box had been opened prior to him receiving it. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Micael also questioned Officer Beach regarding whether the officer could open the box. Officer Beach turned Micael over to narcotics task force investigators when they arrived on scene. Officer Beach later took Micael to the local police station.

Detective Lee Harris, also with the San Marcos Police Department and Hays County Narcotics Task Force, testified that he received information that Micael was known to distribute large amounts of drugs in the local area. He explained the task force was on the lookout for Micael, and when Detective Cormier saw Micael, Detective Harris proceeded to the scene. Detective Harris agreed that he could distinctly smell marijuana as he approached Micael's vehicle. He stated that high-potency marijuana has a stronger smell than lesser quality marijuana. Detective Harris approached Micael and audio-recorded the conversation on his phone. Micael explained that he received the

4

package the day before and that he noticed it was his name, but misspelled. Micael further stated that there was no smell coming from the box and that he never smokes "weed." After Detective Harris explained that Micael's phones would be examined, Micael stated he would "tell him whatever if he [Detective Harris] helps him [Micael] not go to jail." Micael proceeded to state that he had spoken to a "guy" when out in Los Angeles about marijuana but never expected the other "guy" to send anything because they never exchanged money. Detective Harris testified that the lease to Micael's vehicle was located during the search and that the vehicle was registered to Micael.[3] Detective Harris explained the marijuana was shipped from Sacramento, California, where Micael stated his "guy" was from during their interview. Detective Harris had the marijuana taken to the narcotics task force office where the box and packaging were photographed and discarded. The marijuana was also photographed, weighed, and sent to the Austin Police Department (APD) forensic crime lab for testing.

Micael objected when the State tried to introduce State's Exhibit 22 and 23, the evidence box and the actual marijuana for the same reasons found in his motion to suppress. The trial court overruled Micael's motion to suppress. On cross-examination, Detective Harris stated that the original packaging had been photographed and discarded. He agreed that it was not ordinary to be pulled out of a vehicle, handcuffed, and detained and it would be unauthorized without additional circumstances, like the odor of marijuana.

---

[3] Detective Harris explained they like to find an "affirmative link" to the person they arrest for drug possession and the location of the drugs; here, Micael's vehicle.

The State's final witness, Katherine Surma, a forensic scientist with the APD forensic crime lab, stated she weighed and performed the analysis on the marijuana sent to the lab in this case. Surma explained she performed multiple tests analyzing a sample of what was sent to the lab. Based on her testing, Surma determined the sample contained high levels of tetrahydrocannabinol (THC), the active ingredient in marijuana. Surma determined the weight of the marijuana to be 5.0 pounds, with a plus or minus uncertainty of .3.

Micael testified and explained on February 18, 2016, he possessed the marijuana at issue. Micael stated there was no odor of marijuana coming from the box in his vehicle and he did not grant permission to Officer Beach to search his vehicle or the box. On cross-examination, Micael admitted he was at the apartments to drop off the box when he was stopped and that he had opened one of the manila envelopes and handled the plastic package, but the packages contained multiple layers of vacuum-sealed plastic and dryer sheets, so the odor was not present.

The jury convicted Micael of possession of marijuana, and the trial court sentenced him to two years' imprisonment in State Jail Division of the Texas Department of Criminal Justice. *See* TEX. HEALTH & SAFETY CODE ANN. 481.121. However, the trial court probated Micael's sentence for a period of five years. This appeal followed.

## II. SEARCH OF SEALED CONTAINER

By his first issue, Micael argues that his federal and state constitutional rights were violated when Officer Beach searched a sealed container seized from his vehicle.

6

## A.   Standard of Review and Applicable Law

As with any suppression issue, we accord almost total deference to the trial court's determination of the historical facts, especially if those determinations turn on witnesses' credibility or demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). When, as in this case, the trial court has not made specific findings of fact, we must view the evidence in the light most favorable to the trial court's ruling. *Id.* We review *de novo* the trial court's application of law to facts not turning on credibility or demeanor. *Id.*

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. CONST. amend. IV; *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Id.* Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Whether a search is reasonable is a question of law that we review de novo. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). Reasonableness is measured by examining the totality of the circumstances. *Id.* at 63. It requires a balancing of the public interest and the individual's right to be free from arbitrary

detentions and intrusions. *Id.* A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003); *see Best v. State*, 118 S.W.3d 857, 862 (Tex. App.—Fort Worth 2003, no pet.).

One such exception holds that the police may lawfully search an automobile if they have probable cause to believe that the vehicle contains evidence of a crime. *Neal*, 256 S.W.3d at 282 (citing *Wiede*, 214 S.W.3d at 24). Probable cause to search exists when there is a "fair probability" of finding inculpatory evidence at the location being searched. *Wiede*, 214 S.W.3d at 24 n.29 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause also exists when officers have reasonably trustworthy information sufficient to warrant a reasonable belief that an offense has been or is being committed. *McGee*, 105 S.W.3d 609 at 614. In determining whether there was sufficient probable cause, this Court must consider the sum of the information known to the officers at the time of a search. *Fineron v. State*, 201 S.W.3d 361, 366–67 (Tex. App.—El Paso 2006, no pet.).

When this so-called "automobile exception" applies, the police may search "every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). This permission extends to any containers or packages found inside the car, without qualification as to ownership. *California v. Acevedo*, 500 U.S. 565, 571 (1991); *Wyoming v. Houghton*, 526 U.S. 295, 299 (1999).

8

The scope of a warrantless search of an automobile is not defined by the nature of the container in which the contraband is secreted. *Acevedo*, 500 U.S. at 579. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. *Id.* at 579–80. Under this exception, officers may conduct a search of the vehicle that is as thorough as a magistrate could authorize in a warrant particularly describing the place to be searched. *Id.* at 570. For example, probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab. *Id.* at 571. But it does justify a search of the container. *Id.* at 574 (citing *Ross*, 456 U.S. at 821).

In addition to the ready mobility of an automobile, the automobile exception is justified because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. *Keehn v. State*, 279 S.W.3d 330, 335 (Tex. Crim. App. 2009) (citing *California v. Carney*, 471 U.S. 386, 393 (1985)); *see also State v. Ross*, No. 02-09-109-CR, 2010 WL 87427, at *3–4 (Tex. App.—Fort Worth 2010, pet. ref'd) (mem. op, not designated for publication).

### B.    Discussion

The record of evidence presented at trial, which the trial court relied on to overrule the motion to suppress, indicated the officers had reasonably trustworthy information that led them to believe there was probable cause that Micael's vehicle contained evidence of the crime he was committing or about to commit.[4]   *See McGee*, 105 S.W.3d 609 at 614.

---

[4]  Micael's motion to suppress argued the evidence was seized "without a search warrant" and should therefore be considered "fruits of an illegal search." During numerous exchanges with the trial court, Micael argued there was no probable cause to search the vehicle.  However, in his brief to this Court, Micael now contends "there was no reason Beach could not have obtained a warrant if he thought he had

9

Detective Harris testified that he had received information in February 2016 that Micael was distributing large amounts of drugs in the area. The narcotics task force was able to identify the car Micael was known to drive and saw Micael commit traffic infractions while driving the vehicle.

As Officer Beach approached Micael's vehicle after initiating a traffic stop, he indicated he could smell "fresh" marijuana. Officer Beach explained that "fresh" and "burnt" marijuana have different smells, and through his experience and training as an officer, he could distinguish the two odors. Officer Beach also asked Micael why he was shaking during his investigation of the vehicle; Micael stated it was because he had just arrived from the gym.

A search of Micael's vehicle yielded a large amount of clothing and the box. It could be inferred that the box would be the container within the vehicle to store the marijuana. *See Acevedo*, 500 U.S. at 579–80. Additionally, Officer Beach articulated why the box raised suspicions: it was a large box; the only other items in the vehicle were clothes; Micael's name was misspelled on the box; it appeared to have been opened and retaped; Micael appeared nervous during the interaction with Officer Beach; and Micael began pacing when Officer Beach began to open the box. Based on the initial odor of marijuana and the additional facts developed as the investigation progressed, we conclude that there was probable cause to open the box. *See Parker v. State*, 206 S.W.3d 593, 597 n.11 (Tex. Crim. App. 2006) (describing different scenarios involving

---

probable cause to search the sealed container." We find no place in the trial record where the issue of obtaining a warrant was raised, and therefore, find that Micael has waived this particular issue related to his motion to suppress. *See* TEX. R. APP. P. 33.1(a).

probable cause). The trial court did not err in overruling Micael's motion to suppress. We overrule Micael's first issue.

### III. JURY CHARGE

By his second issue, Micael alleges he was egregiously harmed by the lack of a jury instruction explaining extraneous offenses.

### A. Standard of Review

All alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Appellate review of purported error in a jury charge involves a two-step process. *Id.* First, we determine whether the jury instruction is erroneous. *Id.* Second, if error occurred, then an appellate court must analyze that error for harm. *Id.* The issue of error preservation is not relevant until harm is assessed because the degree of harm required for reversal depends on whether the error was preserved. *Id.*

If the "defendant never presents a proposed jury instruction (or fails to object to the lack of one), any potential error in the charge is reviewed only for 'egregious harm' under *Almanza.*" *Oursbourn v. State*, 259 S.W.3d 159, 174 (Tex. Crim. App. 2008) (citing *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g)). As in this case, when an "appellant d[oes] not object to the charge, the error does not result in reversal 'unless it was so egregious and created such harm that appellant was denied a fair trial.'" *Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008) (quoting *Almanza*, 686 S.W.2d at 171). "Errors that result in egregious harm are those that affect the 'very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a

11

defensive theory.'" *Id.* at 461–62 (quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

**B.      Applicable Law and Discussion**

Michael complains that the trial court committed error when the jury was not given an extraneous offense instruction in the jury charge. Since there was no objection by Micael to the jury charge, he must show egregious harm if we determine error occurred.

There was testimony presented both by the State and Micael that alluded to prior dealings with drugs. Detective Harris stated the narcotics task force had information that Micael was distributing drugs in the area. Micael did not object. When the conversation between Detective Harris and Micael was played for the jury, Micael explained he had spoken to a "guy" in California about sending marijuana but that he never expected to receive anything because there had been no monetary exchange. During Micael's testimony, he admitted to possessing the marijuana and lying to the police. Micael additionally stated that he had received packages of marijuana from California before, was at the apartments where he was stopped to drop off the box of marijuana, and knew how the marijuana was packaged.

At no point during the testimony did Micael request a limiting instruction regarding any extraneous offense or bad act. Therefore, "because [Micael] did not request a limiting instruction at the first opportunity, the evidence was admitted for all purposes." *Hammock v. State,* 46 S.W.3d 889, 895 (Tex. Crim. App. 2001). "Jury instructions, if requested, *should be given when the evidence is admitted and then again at the final jury charge.*" *Id.* The Texas Court of Criminal Appeals has noted that "it is impossible for

[the jury] to go back at the close of trial and reassess the evidence in light of the limiting instruction, even if they could appreciate which items of evidence the instruction was supposed to apply to." *Id.* (quoting *Rankin v. State*, 974 S.W.3d 707, 712 (Tex. Crim. App. 1996)). Because the evidence in question was admitted for all purposes, a limiting instruction on the evidence was not "within the law applicable to the case," and the trial court was not required to include a limiting instruction in the charge of the jury. *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 36.16 (West, Westlaw through 2017 1st C.S.)).

Here, even though not required, the trial court, during the charging conference, clarified with Micael that he was not requesting an instruction regarding prior bad acts. Micael agreed that he was not requesting the instruction in the jury charge. Therefore, because Micael previously did not request a limiting instruction, we find the trial court did not commit error by not including an extraneous offense instruction in the jury charge. We overrule Micael's second issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of August, 2018.

13